Kenneth VAN WESTRIENEN and Deborah Van Westrienen, husband and wife, Plaintiffs,

v.

AMERICONTINENTAL COLLECTION CORPORATION, an Oregon corporation, and Phillip Allan Fischer, aka Gus McTavish, Defendants.

No. CV–99–819–ST.

United States District Court, D. Oregon.

April 12, 2000.

---

Damon J. Petticord, Tigard, OR, for Plaintiffs.

Frank H. Lagesen, William G. Fig, Cosgrave Vergeer & Kester, Portland, OR, for Defendants.

**1094**

## OPINION AND ORDER

STEWART, United States Magistrate Judge.

### INTRODUCTION

Plaintiffs, Kenneth and Deborah Van Westrienen, allege that defendants, Americontinental Collection Corporation ("Americontinental") and Phillip Allan Fischer, aka "Gus McTavish" ("Fischer"), violated the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692–1692k, and the Oregon Unlawful Debt Collection Practices Act ("UDCPA"), ORS 646.639–.641, while attempting to collect a debt allegedly owed by plaintiffs to John Saathoff ("Saathoff").

This court has federal question jurisdiction over the FDCPA claim under 28 USC § 1331 and supplemental jurisdiction over the UDCPA claim under 28 USC § 1367. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

Now before this court are defendants' Motion for Partial Summary Judgment (docket # 38) and plaintiffs' Motion for [Partial] Summary Judgment (docket # 44). For the reasons set forth below, both motions are granted in part and denied in part.

### STANDARDS

Federal Rule of Civil Procedure ("FRCP") 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and des-

ignate specific facts showing a genuine issue for trial. *Id* at 324, 106 S.Ct. 2548. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir), *cert denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the non-moving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 630–31. However, when the non-moving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.,* 818 F.2d 1466, 1470 (9th Cir1987), *cert denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id* at 1468.

### FACTS

A review of the parties' facts, as well as the other materials submitted by the parties, including affidavits and deposition excerpts, reveals the following: [1]

Saathoff obtained a default judgment for $3,671 against plaintiffs in California Municipal Court in 1989. On or about November 12, 1998, Saathoff forwarded his claim against plaintiffs to Americontinental. Americontinental is engaged in the business of collecting consumer debts and proceeded to attempt to collect from plain-

---

1. All depositions are referred to by the deponents last name, followed by the page of the deposition transcript.

tiffs the debt owed to Saathoff. Fischer, the President and Chief Executive Officer of Americontinental, at all relevant times used the alias of "Gus Mctavish" while attempting to collect this debt.

Kenneth Van Westrienen has worked for Shaw Development, a general contractor, for over nine years and is a project manager superintendent, meaning that he "handle[s] their work in the field, mak[es] sure their subs, contractors are on time and do their job." Deposition of Kenneth Van Westrienen ("Kenneth Van Westrienen Depo"), p. 21. On June 3, 1999, Fischer called Kenneth Van Westrienen's place of employment and obtained his business cell phone number. On that same day, Kenneth Van Westrienen was at work framing a house, "on top of the roof stacking the roof, putting rafters up and stuff, and the phone rang." *Id* at 23. Kenneth Van Westrienen describes his ensuing conversation with Fischer as follows:

> He introduced himself, said he was collecting a debt, or a judgment, excuse me, is the word he used. He named Mr. Sathoff [sic] and then he said, "You are not the normal type of person that we generally contact in regards to a debt. You appear to pay your bills on time and I want to give you this opportunity to pay this one."
>
> I told him I didn't know what he was talking about, asked him who he was again, and I believe he said that name, ACC, because I didn't remember it until it was said here, and that he needed to collect—I forget the amount of money that he said.
>
> And at that time I told him that I didn't know what he was talking about, I wasn't going to pay anything, that he could talk to an attorney about it.
>
> And after that, he started in with some threats about how he was going to collect the money; that he always collects his money; if I didn't make arrangements with him, that he would have my wages by the end of the day; he knew where my assets were; he knew where I lived; has my phone num-

bers. That's about the gist of the conversation.

*Id* at 23–24.

Shortly thereafter, Kenneth Van Westrienen left work early and saw his attorney. His attorney told him "to ignore it," which "wasn't easy," and he had several sleepless nights. *Id* at 33.

Americontinental then sent a collection letter dated June 3, 1999 ("collection letter"), addressed to both plaintiffs and signed by Gus Mctavish, which provides in part as follows:

> You are hereby being served with a demand to pay your judgment, a final step in allowing us to garnish personal property such as cars and personal property. This process is completed by the Sheriff.
>
> We are advising you that through our investigative division (in yellow pages under pi's and or www.internationaldetective.com) our private detectives have learned how you are obtaining an income and have a list of assets we are to seize.
>
> If we do not hear from you within (5) days, we will execute our judgment by way of a sheriff served garnishment and or seizure. Please do not make us do this, we have been patient, but it is up to you now, we refuse to wait any longer! We are on line at http://www.receivables.com if you prefer to use e-mail in order to contact us.
>
> WE REFUSE TO WAIT AND WILL SIMPLY TAKE YOUR ASSETS. PLEASE DON'T MAKE U.S. DO THIS. PLEASE PAY YOUR OBLIGATION BEFORE IT IS TOO LATE.

Plaintiffs' Exhibit ("Ex") 2.

Plaintiffs received this collection letter on or about June 5, 1999. Affidavit of Kenneth Van Westrienen ("Kenneth Van Westrienen Aff"), ¶ 2. Kenneth Van Westrienen "took it to mean that Mr. Fischer was serious and that he was attempting to collect a debt that I didn't owe, and apparently, had a judgment somewhere against

me." Kenneth Van Westrienen Depo, p. 33. He returned to see his attorney "right away." *Id.* He also informed his work supervisor that someone might garnish his wages and possibly put a lien on his house and possessions. He did not change bank accounts, call Americontinental, or visit their website. *Id* at 35–36.

On June 8, 1999, plaintiffs' attorney, Damon Petticord ("Petticord"), called Fischer and requested documentation for the California judgment which plaintiffs allegedly owed. Affidavit of Damon J. Petticord ("Petticord Aff"), ¶ 2. Fischer answered the telephone, using the alias of Gus Mctavish, and stated that he was "still in the process of transcribing the judgment in Oregon." *Id,* ¶ 3. When Petticord remarked that Fischer might have a problem because "he had already threatened to garnish the Van Westrienens' wages and assets without delay," Fischer responded that "he 'would not play games' because he was a 'multimillionaire,' that he 'wins all his [Unfair Debt Collection Practices] suits,' and that if the Van Westrienens challenged the debt they would have to pay his attorney fees." *Id,* ¶¶ 3–4.

On June 10, 1999, plaintiffs filed the present lawsuit.

## *DISCUSSION*

Defendants move for partial summary judgment as to paragraphs 13(8), 18(6), 18(7) and 21 of the Amended Complaint. Paragraph 13(8) alleges that defendants violated the FDCPA by failing to send plaintiffs a validation of debt notice. Paragraph 18(6) alleges that defendants violated the UDCPA by representing in the collection letter that they employed private detectives. Paragraph 18(7) alleges that Fischer violated the UDCPA by making false statements to Petticord on June 8, 1999. Lastly, paragraph 21 alleges a claim for punitive damages under the UDCPA.

In turn, but without specifying particular paragraphs of the Amended Complaint, plaintiffs move for partial summary judgment because: (1) Fischer called Kenneth

Van Westrienen at work on June 3, 1999, instead of first attempting to call him at home; (2) defendants' June 3, 1999 collection letter makes numerous misrepresentations; (3) defendants' website contains numerous misrepresentations; and (4) Fischer made false statements during his June 8, 1999 phone conversation with Petticord.

For ease of discussion, this court will address the issues in the following order: (1) the validation of debt notice; (2) Fischer's call to Kenneth Van Westrienen at work; (3) defendants' alleged misrepresentations in the June 3, 1999 collection letter and in the June 8, 1999 telephone conversation; and (4) punitive damages.

### I. *Validation of Debt Notice*

█ Defendants move for summary judgment against paragraph 13(8) of the Amended Complaint which alleges that defendants violated 15 USC § 1692g(a) by failing to send plaintiffs a validation of debt notice. The FDCPA "is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Serv. Corp.,* 677 F.2d 775, 777 (9th Cir.1982). Its purpose is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988) (internal quotation marks and citation omitted). Therefore, the FDCPA requires all debt collectors to provide debtors with a written "Validation of Debt Notice" ("Notice") within five days after the initial communication with a consumer which must contain:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be

assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 USC § 1692g(a).

Defendants' June 3, 1999 collection letter includes none of the above statements required by § 1692g(a). However, defendants assert that they sent a proper Notice in a prior letter to plaintiffs dated December 3, 1998. Kenneth Van Westrienen asserts that he never received that letter with the Notice:

Q: Okay, do you remember receiving some kind of notice from Americontinental in December of 1998?

A: No.

Q: The address listed on the notice [the Notice letter], is that your correct address?

A: It is.

Q: To your knowledge, was there any reason in December '98 that you were not receiving mail or could not receive mail?

A: We have had problems with our mail

Kenneth Van Westrienen Depo, p. 18.

Whether plaintiffs actually received the Notice is immaterial, however. The Ninth Circuit has stated that "section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor." *Mahon v. Credit Bureau of Placer County,*

*Inc.*, 171 F.3d 1197, 1201 (9th Cir.1999). In *Mahon,* the defendant organization presented evidence that its

standard business practice established that the [Notice] was sent to the [plaintiffs'] home via first class mail. The [defendant's] CUBS system generated the [Notice], and then another machine mechanically addressed and stuffed the [Notice] into an envelope addressed to the [plaintiffs]. The [Notice] was mailed. Before mailing, [defendant's] employees ensured that the number of outgoing notices corresponded with the number assigned to the daily "batch" of notices to be sent.

*Id* at 1201–02.

The plaintiffs offered no evidence to indicate that the defendant failed to follow its own ordinary business procedures in sending out the Notice. "They simply say they did not receive the [Notice], just as they say they did not receive any of the monthly statements." *Id* at 1202. The Ninth Circuit found no material issue of genuine fact as to whether the defendant sent the required notice and held that the defendant satisfied § 1692g(a).

Here, defendants submit Fischer's affidavit testimony that "[w]hen a judgment debtor account is received the debtor information is entered and a validation notice is automatically generated and mailed to the debtor. A second notice (e.g. the June 3, 1999 letter to plaintiffs)˙is not sent for at least 45 days after the date the validation notice was mailed." Affidavit of Phillip Fischer ("Fischer Aff"), p. 2. Defendants also submit Americontinental's log notes showing activity in plaintiffs' account on December 3, 1998. Somewhat cryptically, the log records show: "Notice 1.PRVJUDG.LETTER sent for Account 13909-1." Defendants' Ex 5, p. 1. While the meaning of this entry is not exactly clear, it appears that Americontinental generated and mailed a letter of some sort relating to the plaintiffs' account at least 45 days before it mailed the collection let-

ter in accordance with its standard business practice. Defendants also submit a copy of the letter they assert they mailed to plaintiffs on or about December 3, 1998, which contains a proper Notice. This is sufficient evidence to establish that defendants properly sent the Notice.

Plaintiffs have not presented any evidence that defendants did not send the Notice. Instead, as in *Mahon*, they simply assert that they never received it. They also attempt to cast doubt on the accuracy of Americontinental's log notes. Each entry on the log notes for the plaintiffs' account lists a specific time next to the date, except for the entry concerning the Notice letter purportedly mailed on December 3, 1998. Plaintiffs also point to the log note from another debtor's account which, unlike plaintiffs' account, shows a time entry for the Notice letter. Plaintiffs posit that because the December 3, 1998 log note does not include a time entry, it was inserted at a later date in order to falsify compliance with the FDCPA. This theory, while interesting, is insufficient to raise a question of fact. While this log entry does not include a time entry, the June 3, 1999 collection letter sent to the plaintiffs also has no time entry. Yet plaintiffs do not dispute that this letter was sent on the date indicated and admit receiving it on or about June 5, 1999. Therefore, the lack of a time entry for December 3, 1998, is not conclusive.

Plaintiffs' theory is not supported by the evidence and fails to raise a genuine issue of material fact as to whether defendants sent the required Notice. Accordingly, defendants' Motion for Partial Summary Judgment is granted against paragraph 13(8) of the Amended Complaint.

## II. *Fischer's Call to Kenneth Van Westrienen at Work*

■ Plaintiffs move for summary judgment against paragraph 18(8) of the Amended Complaint which alleges that Fischer's call to Kenneth Van Westrienen violated ORS 646.639(2)(g).[2] The UDCPA prohibits certain unlawful debt collection practices and prohibits debt collectors from contacting debtors in certain circumstances. *See* ORS 646.639. In particular, ORS 646.639(2)(g) disallows a debt collector to "[c]ommunicate without the debtor's permission or threaten to communicate with the debtor at the debtor's place of employment if the place is other than the debtor's residence." The statute, however, provides a safe harbor for debt collectors who can:

Telephone a debtor's place of employment without informing any other person of the nature of the call or identifying the caller as a debt collector but only if the debt collector in good faith has made an unsuccessful attempt to telephone the debtor at the debtor's residence during the day or during the evening between the hours of 6 p.m. and 9 p.m.

ORS 646.639(2)(g)(B).

Fischer contends that he fits squarely within this safe harbor because he made a "good faith" though "unsuccessful attempt to telephone the debtor at the debtor's residence" before telephoning Kenneth Van Westrienen at work. He looked in the telephone directory for plaintiffs' home telephone number and claims that he could not determine whether their number was listed. Plaintiffs' home telephone phone number was listed at that time in the telephone directory under "K C VanWestrienen" with a Beaverton, Oregon residence. Fischer Depo, pp. 126–27; Plaintiffs' Ex 1, p. 21. Some of the names beginning with "Van" in the telephone book have spaces between the "Van" and the following name, but some do not. Fischer contends that he did not attempt to call the listed number because he did not know whether Kenneth Van Westrien-

---

2. Although paragraph 18(8) alleges a violation of ORS 646.639(g), it is apparent that plaintiffs intended to allege a violation of ORS 646.639(2)(g) and this court will so construe paragraph 18(8).

en used a middle initial "C," and the telephone listing had no space between the "Van" and "Westrienen." Fischer Depo, p. 127.

While the telephone directory listing for "K C VanWestrienen" provided no street address for plaintiffs, contained a middle initial "C," and had no space after "Van," no reasonable person could conclude that Fischer acted in good faith in not attempting to call the listed number. Although the telephone directory listing did not provide a street address, it listed a Beaverton address and Fischer knew or should have known that plaintiffs lived in Beaverton because he previously sent plaintiffs the Notice to their Beaverton address. The listing also was the only listing in the telephone directory for a "Van Westrienen" or any name even remotely similar. Since Fischer is a private investigator, it would have been quite easy for him to place one call to the listed number in order to determine whether or not it was plaintiffs' home telephone number. This he did not do.

Therefore, because Fischer called Kenneth Van Westrienen at work prior to making a "good faith" attempt to first telephone him at home, defendants violated ORS 646.639(2)(g) and are not entitled to the safe harbor exception. Accordingly, plaintiffs are entitled to summary judgment against the allegation in paragraph 18(8) of the Amended Complaint.

### III. Defendants' Alleged Misrepresentations

#### A. June 3, 1999 Collection Letter

Plaintiffs move for partial summary judgment because defendants' collection letter: (1) threatened to garnish plaintiffs' assets and seize their property in violation of the FDCPA and UDCPA (as alleged in paragraphs 13(2), 13(3), 18(2) and 18(3) of the Amended Complaint); and (2) falsely represented that private detectives had investigated plaintiffs and identified a list of

assets to be seized in violation of the FDCPA (as alleged in paragraph 13(6) of the Amended Complaint). Defendants in turn move for summary judgment against the allegation in paragraph 18(6) that defendants violated the UDCPA by representing in the collection letter that they employed private detectives.

 Whether language employed in connection with the collection of a debt violates the FDCPA is a question of law for the court to decide. *Terran v. Kaplan,* 109 F.3d 1428, 1432–33 (9 th Cir1997). " '[T]he impact of language alleged to violate [the FDCPA] is judged under the 'least sophisticated debtor' standard.' " *Baker v. Citibank (South Dakota), N.A.,* 13 F Supp.2d 1037, 1041 (S.D.Ca.1998), quoting *Swanson,* 869 F.2d at 1225. Although the Ninth Circuit in*Swanson* applied the "least sophisticated debtor" standard only to § 1692e(5), subsequent decisions have extended the same standard to other provisions of the FDCPA. *See Wade v. Regional Credit Assn.,* 87 F.3d 1098, 1100 (9 th Cir1996), citing *Swanson,* 869 F.2d at 1225 ("We apply the 'least sophisticated debtor' standard to [§§ 1692e, e(5), e(10), and 1692f]"); *Baker,* 13 F Supp.2d at 1041 (Applying standard to § 1692g, "misleading statements," and § 1692c). Here, this court will apply the "least sophisticated debtor" standard to plaintiffs' claims under §§ 1692e and f.

#### 1. Defendants' Threats to Garnish and/or Seize Assets

Plaintiffs assert that by threatening that "[i]f we do not hear from you within (5) days, we will execute our judgment by way of a sheriff served garnishment and or seizure" (Plaintiffs' Ex 2), defendants violated both the FDCPA and UDCPA. Because defendants could not legally seize or garnish any of plaintiffs' assets or wages in Oregon within five days, plaintiffs accuse defendants of falsely representing the legal status of the debt.[3]

---

**3.** Fischer admits that Americontinental could not have garnished Kenneth Van Westrienen's

Fischer responds that his threatened action did not violate either the FDCPA or the UDCPA because he was able and intended to "blanket garnish the five major banks in California." Fischer Aff, ¶ 7. Because he intended to take action only against plaintiff's assets in California within the five days specified in the collection letter, Fischer asserts that he did not falsely represent the status of the debt.

Plaintiffs, however, misinterpret the threat. Defendants did not threaten to execute their judgment *within* the next five days. Instead, defendants stated that if plaintiffs did not respond to the collection letter within five days, defendants would then execute their judgment. The clear implication is that execution would occur shortly after five days, which could mean the sixth, seventh, tenth, or even the thirtieth day. Within a short period of time after June 10, 1999 (five days after plaintiff's receipt of the collection letter), defendants conceivably could have registered the judgment in Oregon and legally proceeded to execute upon plaintiffs' Oregon assets. The June 3, 1999 log notes state that: "client clld in sd will send an eximplified [sic] copy of the judgment asap to us, once we get this we need to get it over to client 100 to get eximlified [sic] in the state of Oregon ——phil." Defendants' Ex 5, pp. 1–2. Thus, defendants anticipated receiving the exemplified copy of the California judgment from Saathoff shortly after June 3, 1999, which they intended to register in Oregon. It is a question of fact how long that process would have taken. In any event, it was not accomplished by

June 10, 1999, when plaintiffs filed this lawsuit.

However, for purposes of the FDCPA, this court must apply the "least sophisticated debtor" standard. Assuming that plaintiffs are the "least sophisticated debtor," this court must view the threat as plaintiffs perceived it, namely that defendants would take action against their assets in Oregon within five days (or immediately thereafter).

### a. *Liability Under the FDCPA*

■ Plaintiffs move for summary judgment that defendants' threat to garnish their wages and seize their assets violates §§ 1692 f(6), e(2)(A) [4], e(4), e(5), and e(10) of the FDCPA. To avoid all liability under the FDCPA for this threat, defendants assert that they made a mistake of law and thought that they could "execute our judgment by way of a sheriff served garnishment and or seizure" in Oregon within five days. The FDCPA provides a debt collector with the following "bona fide error" defense:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 USC § 1692k(c).

Analogizing this defense to the bona fide error defense under the Truth in Lending

---

wages or seized plaintiffs' assets in Oregon within five days:

Q: You say in here, "If we do not hear from you within (5) days, we will execute our judgment by way of sheriff served garnishment and/or seizure." Could you have done that within five days?
A: Possibly
Q: How?
A: Getting the judgment exemplified.
Q: How long do you have to wait after you get it exemplified before you can garnish?
A: I don't know. I believe it's five days. I'm not sure.

Q: Did you have an exemplified copy of the judgment?
A: No.
Q: Could you have gotten it up here and gotten it filed within five days?
A: No.
Fischer Depo, pp. 145–46.

4. Although paragraphs 13(2) and 13(3) allege a violation of § 1692(2), it is apparent that plaintiffs intend to allege a violation of § 1692e(2)(A) and this court will so construe paragraphs 13(2) and 13(3).

Act ("TILA"), the Ninth Circuit in *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir.1982), concluded that it excuses only unintentional "clerical errors" and does not apply to mistakes concerning the law.

Fischer was ignorant and or mistaken about the law applicable in Oregon that requires a five day waiting period after registering an out-of-state judgement before collection activities could commence on the registered Oregon judgment. Fischer Aff, ¶ 3. However, this error of law is not a "clerical error" and does not establish a "bona fide error" defense under § 1692k(c). Thus, this court will proceed to address each of the violations of the FDCPA alleged in paragraphs 13(2) and 13(3) of the Amended Complaint.

### i. § 1692f(6)

■ Section 1692f(6) forbids the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ... there is no present intention to take possession of the property." Defendants' threat refers to a "sheriff served garnishment and or seizure." By invoking the authority of a sheriff, the threat necessarily refers to judicial rather than to "nonjudicial" action as a sheriff generally acts only pursuant to a court order. Therefore, this subsection is inapplicable to the threat.

■ Furthermore, even if the threat is deemed "nonjudicial," this subsection focuses on defendants' "present intention." Defendants have presented evidence that they intended "to take possession of the property" in California where they apparently had the legal right to do so until they registered the judgment in Oregon. Despite Fischer's declared intention, it is doubtful that defendants would have proceeded to garnish banks in California when the judgment had been sent from California to Oregon for collection in Oregon where plaintiffs lived. Nevertheless, defendants also clearly intended to register the judgment in Oregon, after which they would have had the legal right to garnish

or seize assets in Oregon. Plaintiffs may have misinterpreted defendants' intent, but that is irrelevant for the purposes of this subsection. Given that defendants have submitted evidence of their "present intention" to "take possession of the property," plaintiffs are not entitled to summary judgment as to a violation of § 1692f(6) as alleged in paragraphs 13(2) and 13(3) of the Amended Complaint.

Although defendants have not sought summary judgment against these paragraphs, it is apparent that plaintiffs cannot prove that defendants' threat violated § 1692f(6). Thus, this court *sua sponte* grants summary judgment for defendants against paragraphs 13(2) and 13(3) of the Amended Complaint which allege violations of § 1692f(6).

### ii. § 1692e(2)(A)

■ Section 1692e(2)(A) forbids "the false representation of ... the character, amount, or legal status of any debt." Plaintiffs argue that defendants could not have legally attempted to execute on the judgment in Oregon within five days and therefore misrepresented the "character" and "legal status" of the debt. Whether defendants intended to garnish or seize only plaintiffs' bank accounts in California at that time is irrelevant. Similarly, whether defendants could have proceeded to garnish or seize plaintiffs' Oregon assets at some later date after registering the California judgment in Oregon is irrelevant. What is relevant is how plaintiffs perceived the threat. Plaintiffs had lived and worked in Oregon for some nine years and had no assets in California. They interpreted defendants' statement as a threat to garnish their wages or seize their assets in Oregon within (or shortly after) five days. If defendants intended to only collect assets held by plaintiffs in California until they could register the judgment in Oregon, they should have said so in the collection letter. "One who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line." *Swanson*, 869 F.2d at

1228, quoting *F. T. C. v. Colgate–Palmolive Co.*, 380 U.S. 374, 383, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).

Given the "least sophisticated debtor standard," plaintiff could have inferred, and in fact did infer, that defendants' statement was a threat to seize or garnish their Oregon assets within five days. As interpreted, defendants' statement was a "false representation" as to the "character" or "legal status" of the debt. Therefore, plaintiffs are entitled to summary judgment that defendants violated § 1692e(2)(A) as alleged in paragraphs 13(2) and 13(3) of the Amended Complaint.

### iii. *§ 1692e(4)*

■ Section 1692e(4) forbids the "representation or implication that nonpayment of any debt will result in the ... seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector ... intends to take such action." This subsection focuses on whether the debt collector intended to take an unlawful action. Even if defendants made a misrepresentation from the point of view of the "least sophisticated debtor," the central issue is whether defendants intended to do what plaintiffs feared. As discussed above, defendants have submitted evidence that they intended to take lawful action, first by garnishing California banks and then by proceeding against Oregon assets after registering the judgment in Oregon. Therefore, defendants have successfully raised a genuine issue of material fact to preclude summary judgment for plaintiff based on a violation of § 1692e(4) as alleged in paragraphs 13(2) and 13(3) of the Amended Complaint.

### iv. *§ 1692e(5)*

■ Section 1692e(5) forbids the "threat to take any action that cannot le-

gally be taken or that is not intended to be taken." This subsection is in the disjunctive, requiring either a threat to take illegal action or an empty threat. As discussed above, applying the "least sophisticated debtor" standard, defendants threatened to take illegal action by executing on plaintiffs' Oregon assets before they acquired the legal right to do so. Defendants' intent is not necessarily relevant to their liability under this subsection for threatening illegal action. Therefore, plaintiffs are entitled to summary judgment that defendants violated § 1692e(5) as alleged in paragraphs 13(2) and 13(3) of the Amended Complaint.

### v. *§ 1692e(10)*

■ Section 1692e(10) forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt." Again, applying the "least sophisticated debtor" standard, defendants' threat was a deceptive means to attempt to collect plaintiffs' debt. A "least sophisticated debtor" would certainly interpret the threat to imply that defendants would take immediate action against plaintiffs' assets in Oregon if plaintiffs did not respond within five days. Defendants were unable to take immediate action in Oregon at that time. Therefore, plaintiffs are entitled to summary judgment that defendants violated § 1692e(10) as alleged in paragraphs 13(2) and 13(3) of the Amended Complaint.

### b. *Liability Under the UDCPA*

■ Plaintiffs also argue that defendants' threats to garnish their wages and seize their assets violated ORS 646.639(2)(c) and (2)(k) as alleged in paragraphs 18(2) and 18(3) of the Amended Complaint.[5] Oregon courts do not apply a "least sophisticated debtor" standard to ORS 646.639. Therefore, the court must

---

**5.** Once again, plaintiffs' motion and the Amended Complaint inaccurately refer to

ORS 646.639(c) and (k) which this court interprets as ORS 646.639(2)(c) and (k).

view the threat as written and credit defendants' assertion, as the non-moving parties, that they intended to garnish plaintiffs' bank accounts only in California initially and later execute on plaintiffs' assets in Oregon after registering the California judgment in Oregon.

ORS 646.639(2)(c) makes it unlawful for a debt collector to "[t]hreaten the seizure, attachment or sale of a debtor's property when such action can only be taken pursuant to court order without disclosing that prior court proceedings are required." Thus, the question under ORS 646.639(2)(c) is whether defendants could have legally garnished plaintiff's accounts in California without a court order. If they first needed a court order, then they should have advised plaintiffs that "prior court proceedings are required." Defendants assert that they do not need a court order to garnish bank accounts in California because the judgment against plaintiffs was entered by a California court. Because plaintiffs have not presented conclusive evidence that defendants in fact needed a court order to garnish accounts in California, they are not entitled to summary judgment as to violation of ORS 646.639(2)(c) as alleged in paragraphs 18(2) and 18(3) of the Amended Complaint. In addition, if defendants intended to garnish assets in Oregon, then they may be able to do so without a court order, thus avoiding liability under ORS 646.639(2)(c).

■ ORS 646.639(2)(k) makes it unlawful for a debt collector to "[a]ttempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take." Because this subsection only imposes liability if the defendant has "knowledge or reason to know that the right or remedy does not exist," defendants' knowledge is the central issue. As discussed above, Fischer contends that he had the intent and the right to immediately garnish plaintiffs' accounts in California. If his testimony is credited, as it must be at this stage, defendants are not liable under this statute. Therefore, plaintiffs are not entitled to summary judgment as to a violation of ORS 646.639(2)(k) as alleged in paragraphs 18(2) and 18(3) of the Amended Complaint.

### 2. Private Detective Statements in Violation of the FDCPA

■ Plaintiffs contend that defendants violated § 1692e(10) [6] as alleged in paragraph 13(6) of the Amended Complaint by stating in the collection letter that: "We are advising you that through our investigative division ... our private detectives have learned how you are obtaining an income and have a list of assets we are to seize." Plaintiffs' Ex 2, p. 1.

Fischer asserts that his statements were in large part truthful and thus insulate him from any liability under the FDCPA. He researched whether plaintiffs had any assets or the ability to satisfy the California judgment against them; he is a registered private investigator; and he regularly researches the credit history and potential assets of Americontinental's judgment debtor accounts. *Id.* In the course of investigating plaintiffs, Fischer "ran a bureau, made some phone calls, looked at some confidential information." Fischer Depo, pp. 118–19.

However, applying the "least sophisticated debtor" standard, it is apparent that this statement in the collection letter was deceptive in at least one regard. There is apparently only one investigator (or "detective") working for Americontinental, not

---

**6.** Although paragraph 13(6) alleges a violation of § 1692(10) and plaintiffs refer to § 1692(3)(10) in their motion, it is clear that plaintiffs intend to assert a claim under § 1692e(10), and this court will so construe paragraph 13(6) and the motion.

multiple "detectives" or an "investigative division." Though such a misrepresentation appears inconsequential, defendants intended to convey to plaintiffs that Americontinental was a large, powerful collection agency with a great deal of resources and a large staff. The misrepresentation clearly was calculated to intimidate plaintiffs and facilitate the collection of the underlying debt. As such, this misrepresentation cannot be said to be so inconsequential as to be harmless.

The remaining elements of the statement at issue, however, are close enough to the truth that no violation can reasonably be found. Instead, by representing that they had "detectives" and an "investigative division" when they only had one "detective," plaintiffs are entitled to summary judgment that defendants violated § 1692e(10) as alleged in paragraph 13(6) of the Amended Complaint.

### 3. *Private Detective Statements in Violation of the UDCPA*

■■■ Defendants move for summary judgment as to paragraph 18(6) of the Amended Complaint which alleges that they violated ORS 646.639(2)(k) by falsely representing in the collection letter that they employed private detectives to research plaintiffs' income and assets. This statute makes it unlawful for a debt collector to "[a]ttempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take."

The relevant portion of the statute only forbids the attempt or threat to enforce "a right or remedy." Defendants' alleged statement relates only to the investigation of plaintiffs and their assets. The only

misrepresentation concerned the exaggerated number of detectives working for Americontinental. Nowhere in this particular statement is there an attempt to or threat to enforce a "right or remedy." Therefore, defendants are entitled to summary judgment as to paragraph 18(6) of the Amended Complaint.

### B. *June 8, 1999 Phone Conversation with Petticord*

Defendants move for summary judgment against paragraph 18(7) of the Amended Complaint which alleges that Fischer violated the UDCPA by telling Petticord on June 8, 1999, that he (Fisher) was a multimillionaire and always collects his debts. Plaintiffs seek summary judgment because Fischer: (1) violated both the FDCPA and the UDCPA by representing to Petticord that he would collect attorney fees from plaintiffs if they contested the debt (as alleged in paragraphs 13(5) and 18(5) of the Amended Complaint); and (2) violated the FDCPA by falsely representing to Petticord that he (Fischer) was a multimillionaire (as alleged in paragraph 13(7) of the Amended Complaint).

### 1. *Defendants' Motion*

Paragraph 18(7) of the Amended Complaint alleges that Fischer violated ORS 646.639(2)(k) by falsely representing to plaintiffs' attorney that he (Fischer) was a multimillionaire who always collected his debts.[7]

■■■ ORS 646.639(2)(k) forbids a debt collector to "[a]ttempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the reg-

---

7. Plaintiffs incorrectly cited the statute as ORS 646.639(k) in their Amended Complaint.

The correct cite is ORS 646.639(2)(k).

ular course of business does not take." Although forbidding the improper enforcement or threat to enforce a "right or remedy," this statute does not forbid a debt collector's more general misrepresentations. Because plaintiffs only allege in paragraph 18(7) that Fischer made general misrepresentations, he cannot be liable under ORS 646.639(2)(k). Therefore, defendants are entitled to summary judgment against paragraph 18(7) of the Amended Complaint.

### 2. *Plaintiffs' Motion*

■ As an initial matter, this court must address whether defendants can be liable to plaintiffs for statements allegedly made to plaintiffs' attorney, Petticord. As discussed in this court's previous Findings and Recommendation, defendants may be liable for such statements under §§ 1692e and f, and ORS 646.639(2)(k). *Van Westrienen v. Americontinental*, Civil No. 99–819–ST, Findings & Recommendations by Judge Stewart dated September 2, 1999 (docket # 15), pp. 4–5, adopted by Order of Judge King dated October 4, 1999 (docket # 21). In addition, for the same reasons given in the Findings and Recommendations, defendants may be liable to plaintiffs under ORS 646.639(2)(m) and (2)(n) for these statements made to Petticord.

Next, this court must address whether, for purposes of summary judgment, Fischer made the alleged statements to Petticord. Fischer neither denies nor admits making these statements. Rather, when asked whether he told Petticord that he was a multimillionaire, Fischer stated that he could not recall if he had made that statement. Fischer Depo, p. 187. Because he did not deny making these statements, either at his deposition or in an affidavit, he does not raise a genuine issue of material fact. Instead, for purposes of these motions, this court will presume that on June 8, 1999, Fischer made the alleged statements to Petticord.

### a. *Attorney Fees*

Plaintiffs allege in paragraphs 13(5) and 18(5) of the Amended Complaint that Fischer falsely told Petticord on June 8, 1999, that he (Fischer) would collect attorney fees from plaintiffs if they contested the debt in violation of §§ 1692e(2), f(6), e(10), and ORS 646.639(2)(k), (2)(m), and (2)(n). Plaintiffs assert that attorney fees are not recoverable under either the FDCPA or the UDCPA for enforcement of a California judgment in Oregon. Attorney fees, however, may be awarded to defendants if plaintiffs contest the debt in court and lose. Under the FDCPA, the court may award attorney fees to a defendant "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment." 15 USC § 1692k(a)(3). Also, under the UDCPA, the court may award attorney fees to a defendant so long as the defendant is the prevailing party. ORS 646.641(2). Fischer's statement is therefore technically correct.

■ As noted above, § 1692e(2) forbids the false representation of either "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Fischer's statement does not violate this statute because he did not misrepresent the status of the debt or falsely represent the compensation which he may receive. Therefore, plaintiffs are not entitled to summary judgment as to the violation of § 1692e(2) alleged in paragraph 13(5) of the Amended Complaint. Although defendants have not sought summary judgment against this violation, it is apparent that plaintiffs cannot prove that Fischer's statement to Petticord about collecting attorney fees violated § 1692e(2). Thus, this court *sua sponte* grants summary judgment to defendants as to this claim.

■ Section 1692f(6) forbids the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present intention to take possession of the property." This statute obviously does not apply to the statement at issue as Fischer is not alleged to have threatened to dispossess or disable any of plaintiffs' property. Therefore, plaintiffs are denied summary judgment and defendants are *sua sponte* granted summary judgment as to this violation.

■ Section 1692e(10) forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt." Even though Fischer's statement is technically not false or deceptive, plaintiffs nevertheless are entitled to summary judgment. Had Fischer been entirely forthright, he would have explained that under the FDCPA he could collect attorney fees only if: (1) plaintiffs contested defendants' debt collection methods by filing a lawsuit under the FDCPA; and (2) a court determined that plaintiffs' suit was "frivolous." In other words, Fischer was able to collect attorney fees, but only after a specific series of events had transpired. A "least sophisticated debtor," however, would interpret Fischer's statement as implying that attorney fees were a very real and immediate consequence for any refusal or delay in paying the debt. Thus, plaintiffs are entitled to summary judgment as to § 1692 e(10) as alleged in paragraph 13(5) of the Amended Complaint.

■ Under ORS 646.639(2)(k), ·a debt collector may not "[a]ttempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take." As explained above, under the UDCPA, Fischer may be able to collect attorney fees from plaintiffs if they contest the debt and lose in court. Because his threat to enforce a right or remedy to attorney fees is credible, and the "least sophisticated debtor" standard does not apply to the UDCPA, defendants did not violate ORS 646.639(2)(k). Thus, plaintiffs are denied summary judgment and defendants are *sua sponte* granted summary judgment as to that allegation in paragraph 18(5) of the Amended Complaint.

■ ORS 646.639(2)(m) forbids a debt collector from representing that an existing debt "may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt." Defendants did not represent that the debt allegedly owed by plaintiffs could be "increased by the addition of attorney fees." Rather, Fischer threatened to collect attorney fees from plaintiffs if they challenged the debt. As discussed above, defendants may have been able to collect such fees if plaintiffs contested the debt by filing a lawsuit and if defendants then prevailed. Because defendants did not violate ORS 646.639(2)(m), plaintiffs are denied summary judgment and defendants are *sua sponte* granted summary judgment as to a violation of ORS 646.639(2)(m) alleged in paragraph (18)(5) of the Amended Complaint.

■ ORS 646.639(2)(n) forbids a debt collector from collecting or attempting "to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law." This statute has nothing to do with Fischer's statement about attorney fees and, even if it did, those attorney fees are "expressly allowed by law." Therefore, plaintiffs are denied summary judgment and defendants are *sua sponte* granted summary judgment as to a violation of ORS 646.639(2)(n) alleged in paragraph (18)(5).

**b.** *Multimillionaire Statement*

■ Plaintiffs allege in paragraph 13(7) of the Amended Complaint that

Fischer told Petticord on June 8, 1999, that he (Fischer) was a multimillionaire, in violation of § 1692e(10) which forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt." Defendants do not argue that Fischer is a multimillionaire. In fact, the evidence shows that he is far from being a millionaire. As proof that Fischer's statement was false, plaintiffs' present Fischer's tax returns, which show that he is not a multimillionaire, and in fact, that he is not even a millionaire. Whether applying the "least sophisticated debtor" standard or not, this court readily concludes that Fischer falsely represented his wealth in order to intimidate plaintiffs into paying the debt. As such, Fischer's statement that he is a multimillionaire violates § 1692e(10) and summary judgment is granted for plaintiffs as to paragraph 13(7) of the Amended Complaint.[8]

## C. Defendants' Website

▇▇▇▇ Plaintiffs move for summary judgment because defendants violated § 1692e(10) of the FDCPA by making false representations on their internet website.[9] This statute specifically forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt." Defendants respond that plaintiffs never viewed the website before they filed the lawsuit.

At her deposition, Deborah Van Westrienen relates that she did not visit the website:

Q: So you never called up [Americontinental's] telephone line?

A: I do not believe I did.

Q: Okay. Did you ever look up [Americontinental's] website?

A: No.

Deborah Van Westrienen Depo, p. 22.

Similarly, Kenneth Van Westrienen denied ever viewing the website:

Q: Okay. Did you ever call [Americontinental]?

A: No.

Q: Did you ever look up [Americontinental's] website?

A: No.

Kenneth Van Westrienen Depo, p. 36.

In his subsequent affidavit, however, Kenneth Van Westrienen states that "[a]fter reading the debt collection letter and before filing my complaint against Defendants, I visited Defendants' website online." Kenneth Van Westrienen Aff, ¶ 3. Plaintiffs explain this seeming inconsistency be stating that "[a]t the deposition of Mr. Van Westrienen, Mr. Fig question [sic] him in chronological order as to his contact with defendants. Mr. Van Westrienen viewed the website after consulting with his attorneys and before filing this lawsuit." Plaintiffs' Reply, p. 4.

Plaintiffs also assert, however, that it does not matter whether Kenneth Van Westrienen visited the website before filing the lawsuit. Rather, they contend that because defendants expressly referred to their website in their collection letter, the website is subject to § 1692e(10) whether or not viewed by plaintiffs. This court agrees.

▇▇▇ Under § 1692e(10), the consumer debtor does not have to be the actual

---

**8.** Paragraph 18(7) of the Amended Complaint alleges also that this statement violates ORS 646.639(k). Although plaintiffs did not move for summary judgment against that violation, this court notes that ORS 646.639(k) is inapplicable.

**9.** Plaintiffs, however, did not allege in the Amended Complaint that the website violated

the FDCPA. Instead, at oral argument, plaintiffs' counsel requested that the court construe the Amended Complaint to include allegations that the website violated § 1692e(10). Because defendants have briefed this issue and therefore will not be prejudiced, this court so construes the Amended Complaint.

recipient of the false statement in order to press a claim. *See Van Westrienen v. Americontinental*, Civil No. 99–819–ST, Findings & Recommendations by Judge Stewart dated September 2, 1999 (docket # 15), pp. 4–5, adopted by Order of Judge King dated October 4, 1999 (docket # 21). All that is needed is that a debt collector use a misrepresentation "in connection with the collection of any debt." Defendants are debt collectors who used the misrepresentations in the website "in connection" with collecting the debt from plaintiffs by inviting them to view the website.

■ Defendants' website contains numerous misrepresentations, but plaintiffs move for summary judgment against three in particular. First, defendants represented through the website that they had "three small satellite offices in the United States and in 13 foreign countries." Plaintiffs' Ex 4, p. 14. Fischer, however, testified that Americontinental has never had a physical location in another country. Fischer Depo, p. 77. Second, defendants represented through the website that they have an "in-house detective agency" and employ a "full time investigations staff." Plaintiffs' Ex 4, p. 1. Instead, Americontinental employs only one investigator and that is Fischer. Third, defendants represented through the website that they have doctors on the Americontinental board of directors. Plaintiffs' Ex 4, p. 4. Instead, Fischer admitted that Americontinental has never had a doctor on the board of directors. Fischer Depo, p. 73.

Under the "least sophisticated debtor" standard, all of these misrepresentations violate § 1692e(10). Therefore, plaintiffs are granted summary judgment that these three misrepresentations in defendants' website violate § 1692e(10).

### D. *Punitive Damages*

Lastly, defendants move for summary judgment against paragraph 21 of the Amended Complaint alleging punitive damages under the UDCPA. Plaintiffs seek punitive damages under ORS 646.641(1) which provides that:

> Any person injured as a result of willful use or employment by another person of an unlawful collection practice may bring an action in an appropriate court to enjoin the practice or to recover actual damages or $200, whichever is greater. The court or the jury may award punitive damages, and the court may provide such equitable relief as it deems necessary or proper.

■ Because ORS 646.641(1) provides no guidance for punitive damages awards, ORS 18.537(1) (the general punitive damages provision) controls. This provision requires proof by clear and convincing evidence. Evidence is "clear and convincing" when "the truth of the facts asserted is highly probable." *In re Conduct of Blaylock*, 328 Or. 409, 411, 978 P.2d 381, 381–82 (1999). The clear and convincing evidence must show that, "the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 18.537(1). Punitive damages are a penalty for conduct that is culpable by reason of motive, intent or extraordinary disregard of or indifference to known or highly probable risks to others. *Andor v. United Air Lines, Inc.*, 303 Or. 505, 517, 739 P.2d 18, 23 (1987).

#### 1. *Admissible Evidence*

In pursuit of punitive damages, plaintiffs attempt to introduce several pieces of evidence to which defendants strenuously object. Therefore, before discussing the nature of plaintiffs' evidence, this court must first determine which evidence is admissible.

### a. *Defendants' Website*

█ In the collection letter, defendants invited plaintiffs to view their website which contains a wealth of misinformation. Defendants, however, argue that the website is inadmissible to prove punitive damages because plaintiffs initially stated that they did not view the website before filing this lawsuit. Therefore, defendants assert that under Federal Rule of Evidence ("FRE") 401 and 402, the website is irrelevant. In addition, defendants argue that the website is also inadmissible hearsay under FRE 801.

As discussed above, plaintiffs denied viewing the website in their depositions, but Kenneth Van Westrienen asserts that he viewed the website prior to filing the lawsuit. Whether he viewed the website before or after filing the lawsuit is irrelevant to a discussion of punitive damages, however. Punitive damages are primarily intended to "punish a wilful, wanton or malicious wrongdoer and to deter that wrongdoer and others similarly situated from like conduct in the future." *Friendship Auto v. Bank of Willamette*, 300 Or. 522, 532, 716 P.2d 715, 718 (1986). As such, the website is relevant to a determination of whether defendants' conduct was so egregious as to merit an award of punitive damages.

█ The only remaining question is whether the content of the website is hearsay under FRE 801. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801(c). Here, Kenneth Van Westrienen, by his own account, personally viewed the website and submitted an affidavit detailing specifically what he viewed. Therefore, the contents of the website are not hearsay for purposes of this summary judgment motion. Furthermore, the representations made by defendants on the website are admissible as admissions of the party-opponent under FRE 801(d)(2)(A).

### b. *Samantha Mason's Affidavit*

█ Defendants also object to plaintiffs' attempt to introduce the Affidavit of Samantha Mason ("Mason") which states that on October 18, 1999, a debt collector from Americontinental called her about a debt, shouted profanities at her, and threatened that he could and would have a sheriff come to her house and repossess her personal property by 5:00 p.m. that day, when in fact there was no judgment entered against her. Affidavit of Samantha Mason ("Mason Aff"), ¶ 1. She also avers that on October 19, 1999, Fischer himself called her on the telephone and shouted profanities at her. *Id*, ¶ 2. Defendants argue that Mason is self-interested because she presently is pursuing a lawsuit against Americontinental and Fischer and that her affidavit is inadmissible under FRE 404(b) and 608(b).

█ Mason is no doubt self-interested, but that is not a reason to exclude her testimony. Rather, her interest in the outcome of this case is a proper subject for cross-examination if she testifies at the trial. FRE 404(b), on the other hand, may bar this evidence. FRE 404(b) prohibits evidence of "other crimes, wrongs, or acts" to prove the character of a person "in order to show action in conformity therewith." Evidence ordinarily prohibited under FRE 404(b) may, however, be admitted for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Plaintiffs assert that Mason's affidavit shows that Fischer's "wild threats, swearing, embarrassing a debtor at work and using intimidation in this case were not an aberration. He did it to another debtor at about the same period of time." Plaintiffs' Response, p. 4. Because plaintiffs intend to use Mason's

affidavit to show that Fischer operated according to a "plan" or that his actions were not accidental, FRE 404(b) does not preclude plaintiffs from introducing Mason's affidavit.

 FRE 608(b) prohibits the introduction of specific instances of conduct of a witness for the purpose of attacking that witness' credibility. Plaintiffs are not attempting to introduce Mason's affidavit for such a purpose, however. Instead, the exhibit is to show that defendants have a history or plan of aggressive debt collecting. At this point, therefore, introducing Mason's affidavit does not violate FRE 608(b) and is admissible.

#### c. Police Report

 Finally, plaintiffs seek to enter as evidence a copy of a police report detailing an incident involving Fischer on September 4, 1996. Plaintiffs' Ex 7. The police report concerns charges of reckless endangerment and impersonating an officer which plaintiffs seek to admit as evidence of Fischer's danger to the community. At oral argument, plaintiffs also argued that Fischer's use of a fake badge in 1996 is connected to his present threats to use a sheriff to seize plaintiffs' assets. Plaintiffs appear to argue that Fischer intended to impersonate a sheriff in order to collect plaintiffs' alleged debt.

Defendants object, arguing that the report is inadmissible under FRE 401, 403, 404, 608(b), 609, 801, and 802 because plaintiffs have presented no evidence that Fischer was ever convicted of a crime and all charges arising out of the September 4, 1996 incident were dropped. This court agrees with defendants that the police report is inadmissible.

Plaintiffs have provided no credible reason why this police report is relevant. It is over three years old and has nothing to do with debt collection practices. In addition, plaintiffs' supposed link between charges of impersonating an officer and Fischer's legal threats to use a sheriff to seize assets is extremely tenuous at best. There is simply nothing in the police report relevant to punitive damages for improper debt collection practices under the UDCPA. Rather, the police report is simply an attempt to paint Fischer as a bad person. Punitive damages under ORS 18.537 and ORS 646.641(1) may not be awarded on that basis, but are awarded only for egregious instances of improper debt collection. Therefore the police report is inadmissible under FRE 401 and 402 as irrelevant and this court need not address the remainder of defendants' objections.

#### 2. Analysis

 Having identified the proper evidentiary basis for the punitive damages claim by excluding the police report and allowing other evidence, the next issue is whether plaintiffs have presented enough evidence to survive defendants' summary judgment motion.

Defendants argue separately for summary judgment against the punitive damages claims asserted by each plaintiff. Defendants' collection efforts affected both Kenneth Van Westrienen and Deborah Van Westrienen, however, and their claims need not be examined separately. For example, Fischer first called Kenneth Van Westrienen at work and demanded payment of a judgment. He told Kenneth Van Westrienen that he knew where his asserts were and if he did not agree to pay the debt, he "would have [Kenneth Van Westrienen's] wages by the end of the day." Deborah Van Westrienen interpreted this threat as one applicable as well to her assets and wages. Deborah Van Westrienen Depo, p. 31 ("[Fischer] knew where *our* assets were and what bank *we* banked with") (emphasis added). Likewise, the collection letter which threatened

to seize and or garnish plaintiffs' assets unless they contacted defendants within five days was not addressed specifically to Deborah Van Westrienen. The collection letter, however, concerned mutually held assets. *Id* at 25 ("It wasn't addressed·to me, but my husband's debts, so to speak, are my debts. We own the same things").

To support their punitive damages claim, plaintiffs submit evidence in addition to Fischer's telephone call to Kenneth Van Westrienen at work and the collection letter sent to the plaintiffs' residence.· In the June 8, 1999 conversation between Fischer and Petticord, Fischer misrepresented that he was a multimillionaire, that he always won his lawsuits, and that he would collect attorney fees from plaintiffs. Defendants made many misrepresentations in their website, the general effect of which was to portray Americontinental as large, determined, and powerful in an effort to both attract customers and intimidate debtors. Lastly, Mason's affidavit is .evidence that defendants' intimidation tactics have been recently applied to at least one other debtor.

The parties and court can identify only one case in which punitive damages were awarded under ORS 646.641(1). In *Bennett v. Reliable Credit Association, Inc.,* 125 Or.App. 531, 865 P.2d 496 (1993), plaintiffs bought a used car from a car dealer who also sold plaintiffs insurance and a service contract for the car. He offered to finance the whole package through defendant and plaintiffs accepted. Plaintiffs later discovered that the dealer had not paid the defendant for the insurance or service contract. They contacted the defendant, who repeatedly refused to make´ any adjustments to the account, and told plaintiffs that it would repossess their car if they did not adhere to the original payment schedule. The defendant continued to add interest to the account on the amounts loaned for the insurance and the service contract. The Oregon Court of Appeals concluded, without discussion, that there was sufficient evidence to justify an award of punitive damages.

In this case, plaintiffs assert that the evidence shows that defendants' conduct was more egregious than in *Bennett.* That is a difficult conclusion to draw, however, as the Oregon Court of Appeals did not fully discuss the defendant's actions in *Bennett.* Nevertheless, this court concludes that plaintiffs have presented enough evidence for a jury to find by clear and convincing evidence that defendants' actions were undertaken with an extraordinary disregard of or indifference to known or highly probable risks to plaintiffs.

A jury could find that defendants intended to intimidate the plaintiffs into paying their alleged debt and that their actions were intended to cause distress and worry. Additionally, this court is mindful that the state's interest in allowing punitive damages is to punish willful, wanton, or malicious wrongdoers and to deter the wrongdoers and others similarly situated· from further engaging in such conduct. *Friendship Auto,* 300 Or. at 532, 716 P.2d at 718. Accordingly, defendants' Motion for Partial Summary Judgment is denied against paragraph 21 of the Amended Complaint alleging punitive damages under the UDCPA.

## ORDER

For the reasons stated above, defendants' Motion for Partial Summary Judgment (docket # 38) against portions of the Amended Complaint is GRANTED IN PART and DENIED IN PART as follows:

(1) GRANTED as to:

(a) paragraphs 13(2) and 13(3) alleging a violation of § 1692f(6);

(b) paragraph 13(5) alleging violations of §§ 1692e(2) & f(6);

(c) paragraph 13(8); .

(d) paragraph 18(5);

(e) paragraph 18(6);

(f) paragraph 18(7); and

(2) DENIED as to paragraph 21.

Plaintiffs' Motion for [Partial] Summary Judgment (docket # 44) against portions of the Amended Complaint is GRANTED IN PART and DENIED IN PART as follows:

(1) GRANTED as to:

(a) paragraphs 13(2) and 13(3) alleging violations of §§ 1692e(2)(A), e(5), and e(10);

(b) paragraph 13(5) alleging a violation of § 1692e(10);

(c) paragraph 13(6);

(d) paragraph 13(7);

(e) three misrepresentations in defendants' website in violation of § 1692e(10);

(f) paragraph 18(8) alleging a violation of ORS 646.639(2)(g); and

(2) Otherwise DENIED.