# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-3640/04-3641

_____

Travis Volden,                               *
                                             *
    Appellant/Cross-Appellee,        *
                                             *   Appeal from the United States
    v.                               *   District Court for the District
                                             *   of South Dakota.
Innovative Financial Systems, Inc.,          *
                                             *
    Appellee/Cross-Appellant.        *

_____

Submitted: September 15, 2005
Filed:   March 10, 2006

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Travis Volden appeals from a grant of summary judgment in favor of Innovative Financial Systems, Inc. (IFS) for claims made under the Fair Debt Collection Practices Act (FDCPA) and state-law causes of action for fraud and deceit. IFS cross-appeals the district court's[1] conclusion that IFS is a debt collector for purposes of the FDCPA. We affirm.

_____

[1]The Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.     BACKGROUND

IFS is primarily a check guarantee company that contracts with merchants who accept checks from customers.  IFS, in turn, contracts with EFT Network, Inc. (EFT) to process returned checks through the "automated clearing house" (ACH)–a national network of banks and financial institutions used to transfer funds electronically to and from bank customers' accounts.   Under this arrangement, a check written to a merchant is endorsed with a stamp that includes IFS's account information at Huntington National Bank (HNB), the bank where IFS maintained an account for purposes of the EFT contract, and deposited at the merchant's bank.  If the check is dishonored by the drawer's bank, after the merchant's bank has credited the merchant's account for the amount of the check, the Federal Reserve  sends it to HNB as directed by the endorsement.  HNB then debits IFS's account for the amount of the dishonored check, and IFS attempts to collect on the check electronically or by using conventional methods of phoning or writing letters to the check writer.

The National Automated Clearing House Association (NACHA) is an association of financial institutions who use the ACH.  NACHA promulgates rules for use of the ACH that participating financial institutions agree to follow.  One of those rules provides that before a charge for a collection fee for again presenting a dishonored check can be submitted through the ACH, written authorization by the owner of the account to be charged must be obtained.  As part of its contract with EFT, IFS agreed (1) to comply with the operating rules of NACHA each time it initiated an ACH entry with EFT, (2) to obtain written authorization from account holders in order to collect fees, and (3) that each ACH entry submitted to EFT represents and warrants that account-holder authorization has been obtained for the debiting or crediting of the account.

In June 2002, Volden wrote two dishonored checks to McDonald's restaurants and two to an establishment called the Crow Bar.  The checks totaled $88.68. McDonald's and the Crow Bar contracted with IFS for their check guarantee services.

After the checks were returned by the merchants' banks, IFS electronically submitted them to EFT for re-presentment through the ACH to Volden's credit union. Three of the four dishonored checks were presented twice. IFS also separately submitted a $30.00 collection fee plus $1.80 sales tax for each check.[2] Each presentment resulted in a $20.00 charge from Volden's credit union because of insufficient funds.

When electronic collection failed, IFS sent Volden written notices in July 2002 that his checks had been dishonored and that he should send payment immediately. In September 2002, IFS sent a follow-up notice, giving Volden four options on how to proceed. Volden finally paid the entire debt using his credit card and subsequently brought suit against IFS pursuant to the FDCPA and South Dakota law.

Volden argued in the district court that IFS was a debt collector under the FDCPA, making it subject to that Act. Volden also argued that because he had not authorized IFS to electronically collect fees from his account, as required by the NACHA rules and by the IFS-EFT contract itself, that IFS had engaged in a false, deceptive, and misleading practice when it submitted the fee to EFT for collection. IFS countered that it was not a debt collector, and even if it were, the conspicuously posted signs at the merchants' cash registers and Volden's signing of the checks constituted Volden's agreement to be charged the collection fee. The district court held that per <u>Duffy v. Landberg</u>, 133 F.3d 1120 (8th Cir. 1998) (<u>Duffy I</u>), IFS was a

---

[2]South Dakota law provides that

> [i]f a merchant or place of business conspicuously posts a notice on its premises . . ., stating that a fee will be assessed against returned checks, any person who issues a check or other draft to the merchant or place of business which is not honored [due to insufficient funds] is liable for all reasonable costs and expenses of collection. . . . The costs and expenses provided for in this section are reasonable if they do not exceed thirty dollars plus any applicable sales tax.

S.D. Codified Laws § 57A-3-421.

debt collector within the meaning of the FDCPA. It also held that 15 U.S.C. § 1692f(1) permits collection of a fee if authorized by the debtor *or allowed by law*. Since South Dakota Codified Laws section 57A-3-421 authorizes check fees where signs are posted by merchants, and the court found that both McDonald's and the Crow Bar had signs posted, the court concluded that IFS could collect the fees. The court granted summary judgment to IFS.

Volden appeals, arguing IFS misrepresented facts to a third party in the process of collecting on a debt, and that its written notices to Volden were not adequate, all in violation of the FDCPA. IFS cross-appeals the district court's conclusion that it is a debt collector under the FDCPA.

## II.    DISCUSSION

We review the grant of summary judgment de novo, viewing the evidence in a light most favorable to the nonmoving party. Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir. 2002).

### A.    Is IFS a Debt Collector Under the FDCPA?

We deal first with IFS's cross-appeal, for if IFS is not a debt collector for purposes of the FDCPA, the statute does not apply, and Volden's federal claims fail. The FDCPA imposes civil liability only on debt collectors, as they are defined by the statute. 15 U.S.C. § 1692k. A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. at § 1692a(6).

To argue that it is not a debt collector, IFS attempts to divorce the collection fee it assessed against Volden from the underlying amount of each check it collected.

After all, IFS asserts, Volden sued it over the collection fee, and not over the underlying check debt. Viewing the collection fee in isolation, IFS argues that (1) the collection fee is not a "debt" under the FDCPA because it was not a "transaction" for personal, family, or household purposes; (2) the collection fee was not a debt in default at the time of attempted collection, as required by the statutory definition of "debt collector;" and (3) the collection fee is a first-party obligation for which IFS is a *creditor* of Volden, and not a debt collector.

We are not convinced by IFS's inventive premise. The collection fee cannot be viewed in a vacuum. It arose as an incident to the underlying debt IFS collected on the dishonored checks, and thus is not an independent basis on which debt-collector status under the FDCPA may be determined. The FDCPA bars debt collectors from using unfair or unconscionable means to collect or attempt to collect "any debt." 15 U.S.C. § 1692f. The FDCPA indicates that collection fees which arise by way of an underlying debt are viewed as part of that debt for purposes of determining conduct that falls under the statute. "The collection of any amount (including any interest, *fee, charge, or expense incidental to the principal obligation*)" is deemed the collection of a debt. Id. at § 1692f(1) (emphasis added). The definitions section defines "debt collector" using the same "any debt" language. Id. at 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts . . . ."). Thus, the collection fees in this case cannot be viewed apart from the underlying check amounts in an attempt to avoid debt-collector status under the FDCPA.

Viewed in this light, IFS's argument that it is not a debt collector fails. First, the debt IFS collected from Volden was for a transaction for personal, family, or household purposes. It is undisputed that Volden wrote the checks at issue to McDonald's and the Crow Bar for personal uses. Second, the debt IFS collected was also a debt in default at the time of attempted collection. Section 1692a(6)(F)(iii) excludes from the definition of "debt collector" any person attempting to collect a

debt "which was not in default at the time it was obtained by such person." The only reason the checks were referred to IFS was because they were dishonored by Volden's credit union. Had the checks been honored, IFS would have never obtained them. This court's decision in Duffy I forecloses any argument that a dishonored check is not a debt in default. Third, the debt was not a first-party obligation making IFS a creditor of Volden.

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4). We agree with those courts that have found that check authorization services do not become creditors under the Act when they attempt to collect a defaulted debt assigned to them by another party. Winterstein v. CrossCheck, Inc., 149 F. Supp. 2d 466, 470 (N.D. Ill. 2001) ("[Check authorization service] is not a creditor within the meaning of the FDCPA [where] it receive[s] an assignment of a debt in default."); Holmes v. Telecredit Serv. Corp., 736 F. Supp. 1289 (D. Del. 1990) (holding that check authorization service was not a creditor because it received title to dishonored checks from another party after the checks were already in default). The debt IFS was assigned was in default and, therefore, IFS was not a creditor of Volden.

Given (1) the FDCPA's definition of "debt collector," (2) that IFS's principal business–some eighty percent–is processing dishonored checks, and (3) our decision in Duffy I, we hold that IFS is a debt collector under the FDCPA. See Duffy, 133 F.3d at 1124 ("[T]hird-party attempts to collect payment on a dishonored check can be debt collection practices within the meaning of the FDCPA and be subject to its consumer protections.").

**B. Did IFS Use a False, Deceptive, or Misleading Representation or Means In Connection with the Collection of a Debt, in Violation of the FDCPA?**

Having determined that IFS is subject to the FDCPA, we turn to Volden's various arguments that IFS made a false, deceptive, or misleading representation in connection with the collection of Volden's debt. We begin with his assertion that IFS made a false representation to EFT, making IFS liable to Volden under the FDCPA.

**1. Was IFS's Submission of Collection Fee a False, Deceptive, or Misleading Representation?**

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. As earlier noted, IFS's contract with EFT states that IFS "agrees to comply with all rules at the time each entry is initiated by [IFS] with respect to the most recent Represented Check Entry Program Guidelines . . . and that each entry [of a collection fee claim to the ACH] shall in no way breach any Federal, State or local statute or regulation pertaining to electronic funds transfers and/or electronic check representment . . . including the operating rules of NACHA." It then states that "[IFS] must obtain written authorization from the account holder in order to collect a fee." The contract also says that "[IFS] *represents and warrants* with respect to all entries that [EFT] originates for [IFS] that (1) each [debtor] has *authorized* the debiting or crediting of its account, (2) each entry is for an amount agreed by the [debtor], and (3) each entry is in all respects *properly authorized*." (Emphasis added).

IFS *promised* EFT that its entries would comply with applicable law and the NACHA rules, and that IFS would obtain written permission from account holders to collect a fee. When IFS submitted Volden's checks to EFT for processing, it apparently did not have Volden's written authorization to collect the fees, which is required by NACHA's rules and is a direct requirement of the contract. Thus, by not

obtaining Volden's written permission, IFS apparently *breached the contract* with EFT in two ways. But these breaches, by themselves, are not a false, deceptive, or misleading *representation* by IFS to EFT. IFS did not affirmatively tell EFT at the time it submitted Volden's checks that it had his permission to collect the fee; its actions breached the contract, the claim for which, if any, belongs to EFT.

IFS's contract with EFT does, however, state that an implicit representation flows with the submission of each check collection entry fee. IFS "*represents and warrants*" (emphasis added) with each entry submitted that the account holder has authorized the debiting of the account for the amount to be debited, and that "each entry is in all respects *properly authorized*." (Emphasis added). Whether IFS falsely represented that Volden had authorized collection of the fee, then, turns on the meaning of "properly authorized" under the contract.

Regulation E, 12 C.F.R. §§ 205.1 et seq., regulates electronic fund transfers through the ACH under the Electronic Fund Transfer Act (15 U.S.C. §§ 1693 et seq.). Supplement I to section 205.3 of Regulation E (entitled "Coverage") states that a consumer authorizes a check collection fee to be debited electronically from his or her account "where the consumer has received notice that a fee imposed for returned checks will be debited electronically from the consumer's account." The record indicates that both McDonald's and the Crow Bar had posted signs warning consumers of the check collection fee charged by IFS for returned checks. Thus, under Regulation E's "notice-equals-authorization" rule, Volden, by paying the merchants with a check and having notice of the fee, had authorized IFS to debit his account, and in that sense the collection fee entry was "properly authorized."

But the contract expressly states that "[IFS] must obtain *written* authorization from the account holder in order to collect a fee." (Emphasis added). The contract states it is governed by Nevada law. Under Nevada law, "[a] contract is ambiguous if it is reasonably susceptible to more than one interpretation." Margrave v. Dermody Props., Inc., 878 P.2d 291, 293 (Nev. 1994). While this contract provision does not

-8-

specifically define "properly authorized" for purposes of the re-presentations section, that term is not reasonably susceptible to more than one interpretation in this case. The express terms of the contract contemplate written authorization, not implied authorization per Regulation E, and thus "properly authorized" means *written* authorization by the consumer. There is no dispute that IFS did not have Volden's written authorization. Thus, when IFS submitted the collection fees to EFT, by definition under the contract, IFS falsely represented to EFT that such submissions were "properly authorized."

## 2. Was IFS's False Representation "In Connection With" the Collection of a Debt?

Though IFS, by the terms of the contract, made a false representation, that representation was made to EFT, not to Volden. Volden argues that the language of section 1692e does not require that a false representation be made to the consumer. He argues that the "in connection with" language in the section includes false representation made to others while in the process of collecting a debt. Volden directs us to only one district court case in support of his argument. Notwithstanding this being relatively scant support, even the case provided is distinguishable. See Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1107-08 (D. Or. 2000).

In Van Westrienen, the district court held that under section 1692e, "the consumer debtor does not have to be the actual recipient of the false statement in order to press a claim. All that is needed is that a debt collector use a misrepresentation 'in connection with the collection of any debt.'" Id. (citation omitted). In that case, a debt collector maintained misleading information on its website, and in a collection letter *referred the plaintiff* to the website. There was conflicting testimony about whether the plaintiff actually viewed the site, but the plaintiff argued it did not matter since the information on the site was misleading, and the debt collector referred the plaintiff to the site in its collection letter. The court agreed, stating "[d]efendants are debt collectors who used the misrepresentations in

the website 'in connection' with collecting the debt from plaintiffs by inviting them to view the website." Id. at 1108. Though viewed in a vacuum the district court's statement seems to broaden the scope of misleading representations beyond the debtor, the context involves a debt collector *directing a debtor* to misleading information.

We have found only one other case, again from the same court that issued Van Westrienen, to assert a similarly broad sentiment. In Mathis v. Omnium Worldwide, No. Civ. 04-1614-AA, 2005 WL 3159663 (D. Or. Nov. 27, 2005), plaintiff brought suit against a debt collector who persisted in contacting her about her deceased father's debts. The court rejected the debt collector's argument that plaintiff could not bring suit under the FDCPA because she was not the consumer who owed the debt. Citing section 1692e, the court stated that "the statutory language does not require the prohibited conduct to be directed only at the consumer to be actionable." Id. at *4. Though this statement by itself might support Volden's argument, the thrust of Mathis was to clarify that the statutory language of the FDCPA "does not limit causes of actions to those brought by a 'consumer,' so long as the alleged conduct was directed *at the plaintiff*." Id. (emphasis added).

We do not find Volden's argument persuasive. In the instant case, IFS made its false representation to EFT, and EFT is not the plaintiff. No false representation was made directly to Volden by IFS's submission of the collection fees to EFT. The weight of authority applying section 1692e does so in the context of a debt collector making a false, deceptive, or misleading representation *to the plaintiff*. Volden has not shown that section 1692e contemplates liability for the kind of representation IFS made to EFT. We find that such actions do not fall within the "general application" of the section. 15 U.S.C. § 1692e.

The FDCPA is designed to protect consumers from abusive debt collection practices such as the use or threat of violence, obscene language, publication of shame lists, and harassing telephone calls. Peters, 277 F.3d at 1054. Volden admits

that his only actual damages arise from insufficient fund fees assessed by *his own credit union* when IFS's collection fees were presented for payment. But that is between him and his credit union, no doubt a condition of the contract governing his account. Volden simply reaped the consequences of writing bad checks. He issued them having notice that a collection fee would be assessed. Per Regulation E, that notice authorized IFS to collect the fee electronically from Volden's account. Collection of that fee did not violate the FDCPA. That IFS contracted with EFT to follow additional rules does not mean that IFS's responsibilities to Volden under the FDCPA were somehow enhanced.

### 3.    Did IFS's Notices Constitute False Representations?

#### a.    Actions That Could Be "Legally" Taken

Volden uses the contract between IFS and EFT for another of his arguments. Section 1692e(5) states that the "threat to take any action that cannot legally be taken or that is not intended to be taken" constitutes a false, deceptive, or misleading representation. Notices IFS sent Volden about his returned checks stated "Your check has been electronically represented for payment and a draft *will be charged against your account* for the highest service fees allowed by law." (Emphasis added). Volden argues that because IFS was contractually required to obtain written authorization to draft his account, and IFS had not done so, IFS could not "legally" draft his account as the letter states. Thus, Volden argues, the letter constitutes a threat to take action that cannot "legally" be taken. He cites <u>Picht v. John R. Hawks, Ltd.</u>, 236 F.3d 446 (8th Cir. 2001) and <u>Duffy v. Landberg</u>, 215 F.3d 871 (8th Cir. 2000) (<u>Duffy II</u>) for support.

<u>Picht</u> did not involve a representation to a debtor about actions that could be legally taken. In any event, <u>Picht</u> dealt with the proper use of *statutory* garnishment law by a debt collector and its attorney. Similarly, <u>Duffy II</u> found a debt collector had violated section 1692e(5) for misrepresenting state *statutory* law. IFS's statement did

-11-

not threaten any action prohibited by law. Indeed, as the district court noted, South Dakota statute specifically provides for the fee IFS collected, and Regulation E allowed IFS to debit the fee electronically. At most, IFS's statement in the notices indicated that it would breach or had breached its contract with EFT. But breaching the contract in this case would not violate any legislative enactment. Volden's argument is without merit.

### b.      Identification As a Debt Collector

Volden asserts IFS violated section 1692e(11) by failing to affirmatively state in its September 2002 letter to Volden that it was a debt collector. Subsection (11) defines the failure of a debt collector to disclose in its initial communication that it is attempting to collect a debt, and "in subsequent communications that the communication is from a debt collector," as a false, deceptive, or misleading representation. The September 2002 letter states "Federal law requires us to inform you that this is an attempt to collect a debt and any information obtained will be used for that purpose." Though the letter does not say it is from a debt collector, the fact it says it is sent in an attempt to collect a debt is sufficient for even the unsophisticated consumer to understand that such a letter is necessarily from a "debt collector." While the unsophisticated consumer test is meant to protect consumers of below average sophistication, it also involves an element of reasonableness that prevents bizarre interpretations of debt collection notices. Peters, 277 F.3d at 1055. We find the letter "effectively conveys" the fact that it is from a debt collector, and thus does not violate section 1692e(11). Id. at 1056.

### C.      Did IFS Violated Section 1692g(a)(5)?

Finally, Volden argues that IFS violated section 1692g(a)(5) by failing to include a required statement in IFS's written notices. That section states that "a debt collector *shall*," within five days following an initial communication if that communication did not contain the required information, send the consumer a written

notice that includes "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692(g)(a)(5) (emphasis added).[3] The record reflects that IFS's statements do not contain this precise statement.

IFS argues, however, that the statement it gave Volden in its initial notice, "[i]f you notify this office in writing, within 30 days, this office will send you verification

_____

[3]15 U.S.C. § 1692(g)(a)(1) through (5) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

(1)     the amount of the debt;
(2)     the name of the creditor to whom the debt is owed;
(3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

-13-

of you [sic] debt" (see sections 1692g(a)(3)-(4)), in conjunction with identifying the McDonald's stores as the creditors to whom the debt is owed (see section 1692g(a)(2)), and the locations of the McDonald's stores, "provided all the information required" by section 1692g(a)(5). While we agree with Volden that IFS did not literally comply with the wording specified in part (a)(5), we think that there was substantial compliance with the debtor-protection purposes of the statute.

We recognize that the Seventh Circuit appears to take a more strict approach in Huff v. Dobbins, Nos. 98-2286, 98-2861, 1999 WL 370036 (7th Cir. June 2, 1999), an unpublished opinion. The overriding issue presented in Huff was, however, whether section 1692g(a) permits an "attorney exception" to the specific notice requirements of the section, as argued by the Dobbins law firm. As a peripheral matter, the Seventh Circuit included a footnote that mentioned the district court's (but apparently not the parties') notice of the failure of the defendant to recite the precise words of 1692g(a)(5) in its notice. In answering the major question presented, and presumably the (a)(5) issue by implication, the court said "[t]he statute 'leaves no room for deviation in the language of the validation [of debts] notice.'" Id. at *4 (quoting Jang v. A.M. Miller and Assocs., 122 F.3d 480, 482 (7th Cir. 1997)).

While we substantially agree with the Seventh Circuit, an examination of the legislative history of the FDCPA prompts us to deviate slightly from the seeming rigidity of Huff under the circumstances of this case. There is no question that Volden was at all times fully aware that he had presented the dishonored checks to two different McDonald's restaurants. He was informed by IFS that the McDonald's stores (by location) were the creditors to whom the debt was owed. Thus, if Volden had asked in response to an (a)(5) statement for "the name and address of the original creditor, if different from the current creditor" the only accurate answer would have provided Volden absolutely no useful information. Thus, at best for Volden, the technical and meaningless omission by IFS could not have been seen by Congress as a purposeful violation of the FDCPA. See, e.g., Richmond v. Higgins, 435 F.3d 825, 829 (8th Cir. 2006). Accordingly, we find no violation.

### D. State Claims

The district court did not reach the merits of Volden's state-law claims for fraud and deceit under South Dakota Codified Laws §§ 20-10-1 and 20-10-2. Volden asks us to remand for trial on these issues. Volden did not brief these state-law claims, though IFS did. Given the foregoing discussions, we find no reason to reverse summary judgment on the state-law claims.

## III. CONCLUSION

For the reasons outlined above, we reject the cross-appeal and affirm the grant of summary judgment to IFS on Volden's claims.

_____