IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-78

Filed: 31 December 2020

Mecklenburg County, No. 18 CVS 18069

PIA TOWNES, Plaintiff,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant.

Appeal by Plaintiff from an order entered 16 August 2019 and judgment entered 7 October 2019 by Judge Robert C. Ervin in Superior Court, Mecklenburg County. Appeal and cross-appeal by Defendant from same and an additional order entered 7 October 2019 by the same judge in the same court. Heard in the Court of Appeals 22 September 2020.

*J. Jerome Hartzell and North Carolina Justice Center, by Jason A. Pikler, Carlene McNulty, and Emily P. Turner, for Plaintiff-Appellant/Cross-Appellee.*

*Ellis & Winters LLP, by Jon Berkelhammer, Joseph D. Hammond, and Michelle A. Liguori, for Defendant-Appellee/Cross-Appellant.*

*Center for Responsible Lending, by William R. Corbett, and Legal Aid of North Carolina, Inc., by Celia Pistolis, amici curiae.*

*Smith Debnam Narron Drake Saintsing & Myers, LLP, by Caren D. Enloe, for amicus curiae North Carolina Creditors Bar Association.*

McGEE, Chief Judge.

Pia Townes ("Plaintiff") appeals and Portfolio Recovery Associates, LLC, ("PRA") cross-appeals from a partial summary judgment order holding PRA liable for

two violations of North Carolina's Consumer Economic Protection Act of 2009, 2009 N.C. Sess. Laws 1603, 1603, ch. 573, § 1 *et seq.* (the "Act"), and dismissing Plaintiff's remaining claims under the same. Both parties appeal the trial court's final judgment awarding Plaintiff $500 for each of the two violations, and PRA appeals another order denying its motion to dismiss all of Plaintiff's claims for lack of standing. We affirm in part and reverse in part the partial summary judgment order and vacate in part the final judgment. We also affirm the order denying PRA's motion to dismiss.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

A. Statutory Background

Resolution of the appeals in this case requires examination and interpretation of the Act's numerous statutory requirements imposed on debt buyers who seek to collect debts through litigation and the subsequent entry of default judgments. Given the specific and specialized nature of the statutes at issue, a brief overview of the pertinent provisions of the Act is beneficial.

The Act was passed in 2009 in a period of recession and amended previously existing consumer protection statutes to impose additional debt collection requirements on debt buyers. 2009 N.C. Sess. Laws at 1604-09, ch. 573, §§ 4.(a)-9. These amendments included an expansion of what constitutes an unfair practice in debt collection, *id.* at 1604-05, ch. 573, § 5, and required debt buyers, prior to

"bringing suit . . . or otherwise attempting to collect on the debt[,]" to possess "(i) valid documentation that the debt buyer is the owner of the specific debt instrument or account at issue and (ii) reasonable verification of the amount of the debt allegedly owed by the debtor." N.C. Gen. Stat. § 58-70-115(5) (2019). "Reasonable verification[,]" as statutorily defined, "shall include . . . an itemized accounting of the amount claimed to be owed, including all fees and charges." *Id.* The amendments also newly required a debt buyer to "giv[e] the debtor written notice of the intent to file a legal action at least 30 days in advance of filing[,]" which also "shall include . . . an itemized accounting of all amounts claimed to be owed." 2009 N.C. Sess. Laws at 1604-05, ch. 573, § 5; N.C. Gen. Stat. § 58-70-115(6) (2019).

In addition to these prerequisites to collection by suit, the Act imposed new protections in the form of heightened pleading standards. 2009 N.C. Sess. Laws at 1608, ch. 573, § 8. These included a requirement that debt buyers enclose with their complaint:

> A copy of the assignment or other writing establishing that the plaintiff is the owner of the debt. If the debt has been assigned more than once, then each assignment or other writing evidencing transfer of ownership must be attached to establish an unbroken chain of ownership. Each assignment or other writing evidencing transfer of ownership must contain the original account number of the debt purchased and must clearly show the debtor's name associated with that account number.

N.C. Gen. Stat. § 58-70-150(2) (2019).  In seeking a default judgment on such a complaint, the Act mandates debt buyers "file evidence with the court to establish the amount and nature of the debt."  N.C. Gen. Stat. § 58-70-155(a) (2019).  It then clarifies that:

> The only evidence sufficient to establish the amount and nature of the debt shall be properly authenticated business records that satisfy the requirements of Rule 803(6) of the North Carolina Rules of Evidence.  The authenticated business records shall include at least all of the following items:
>
> . . . .
>
> (4) An itemization of charges and fees claimed to be owed.
>
> (5) The original charge-off balance, or, if the balance has not been charged off, an explanation of how the balance was calculated.
>
> (6) An itemization of post charge-off additions, where applicable.
>
> . . . .

N.C. Gen. Stat. § 58-70-155(b) (2019).

As for enforcement of the above provisions, the Act makes debt buyers civilly liable to debtors for both the actual damages incurred and "a penalty in such amount as the court may allow, which shall not be less than five hundred dollars ($500.00) for each violation nor greater than four thousand dollars ($4,000) for each violation." N.C. Gen. Stat. § 58-70-130(b) (2019).  The Act establishes such violations as "unfair

or deceptive acts or practices," but prohibits trebling of the civil penalty. N.C. Gen. Stat. § 58-70-130(c) (2019).

B. Facts in This Appeal

Plaintiff opened a credit card account with HSBC Bank Nevada, N.A./GM, ("HSBC Nevada") in 2006. Six years later, HSBC Holdings PLC ("HSBC"), through its wholly-owned subsidiaries and affiliates, sold its credit card business to Capital One Financial Corporation ("Capital One"). Capital One continued to use HSBC's logo and name by permission in servicing these credit card accounts.

Plaintiff stopped paying her credit card debt in June, 2012; in six months, Capital One charged-off her account. PRA later purchased a number of accounts from Capital One, N.A. and Capital One Bank (USA), N.A. in 2013. According to electronic records purportedly provided to PRA by Capital One, N.A., Plaintiff's charged-off account was among the accounts purchased by PRA at that time.

PRA sought to recover on the credit card debt owed by Plaintiff, mailing her a notice of intent to file legal action on 8 April 2014. When it received no response, PRA filed suit in District Court, Mecklenburg County, on 27 January 2015 seeking payment of the debt in the amount of $1,866.90. PRA attached to its complaint the following documents: (1) Plaintiff's original credit card application; (2) an account statement for the period of 26 April to 27 May 2012 showing Plaintiff's last partial payment on the account; (3) an account statement for the period of 26 November to

27 December 2012 showing a final balance of $1,866.90; (4) a notice of assignment and several documents from the United States Securities and Exchange Commission showing Capital One's purchase of HSBC's credit card business; (5) bills of sale for the purchase of several undisclosed accounts by PRA from Capital One, N.A., and Capital One Bank (USA), N.A.; and (6) a spreadsheet printed from electronic records provided by Capital One, N.A. to PRA stating Plaintiff's account was among the accounts sold to PRA. The spreadsheet showed that Plaintiff's account was first delinquent on 26 June 2012, was delinquent for 180 days, and was still delinquent as of 26 December 2012. It also listed a charge-off amount of $1,354.65 and final statement balance on 27 December 2012 of $1,866.90.[1]

Plaintiff did not answer PRA's complaint, leading PRA to seek and obtain a default judgment on 1 April 2015. Plaintiff eventually moved to have the default judgment set aside and, on 8 June 2016, the district court granted Plaintiff's motion. The court concluded that PRA failed to comply with several provisions of the Act governing attempts by debt buyers to pursue default judgments. Specifically, the court concluded that PRA's default judgment was void as a matter of law because PRA failed: (1) to introduce into evidence an itemization of the charges and fees as required by N.C. Gen. Stat. § 58-70-155(b)(4); and (2) to properly authenticate any

---

[1] The spreadsheet lists this information in abbreviated format as follows: "DEL AS OF 20121226," "# DAYS DEL 180," "DT 1ST DEL 20120626," "CHG_OFF 1354.65," "STMTDATE 20121227," and "STMTBAL 1866.90."

account statements or other business records necessary to establish the amount and nature of the debt as required by N.C. Gen. Stat. § 58-70-155. PRA later voluntarily dismissed its collection action.

Plaintiff brought suit against PRA on 18 September 2018 under N.C. Gen. Stat. § 58-70-130(b) of the Act, which authorizes debtors to recover a statutory penalty of between $500 to $4,000 for each violation of the Act by a debt collector. Plaintiff's complaint identified several violations of the Act by PRA, including its: (1) failure as a debt buyer to reasonably verify the amount of the alleged debt with "an itemized accounting of the amount claimed to be owed, including all fees and charges," prior to attempting collection and filing suit as required by N.C. Gen. Stat. § 58-70-115(5); (2) failure to include "an itemized accounting of all amounts claimed to be owed" in the notice of intent to file a legal action sent to Plaintiff prior to suit as required by N.C. Gen. Stat. § 58-70-115(6); (3) failure to attach to its complaint adequate documentation "establish[ing] an unbroken chain of ownership" for the debt as required by N.C. Gen. Stat. § 58-70-150(2); and (4) failure to file the "properly authenticated business records" required by N.C. Gen. Stat. § 58-70-155 prior to entry of default judgment, namely "[a]n itemization of charges and fees claimed to be owed . . . [and] [t]he amount of interest claimed and the basis for the interest charged" as required by N.C. Gen. Stat. §§ 58-70-155(b)(4) and (8).

Following discovery, Plaintiff moved for summary judgment on liability as to all claims. After a hearing on the matter, the trial court entered partial summary judgment on liability for Plaintiff on her claims under N.C. Gen. Stat. §§ 58-70-115(6) and -155 and granted summary judgment for PRA on Plaintiff's claims under N.C. Gen. Stat. §§ 58-70-115(5) and -150. PRA thereafter filed a motion to dismiss for lack of subject matter jurisdiction, asserting Plaintiff lacked standing because she suffered no actual injury from PRA's violations of the Act. The trial court denied that motion by order entered 7 October 2019. To avoid the expense of trial, the parties then stipulated that PRA should pay a $500 statutory penalty for the two violations for which it was held liable at summary judgment, and the trial court entered a final judgment to that effect later that day. Plaintiff filed her notice of appeal on 21 October 2019, and PRA filed its notice of appeal and cross-appeal four days later.

## II. ANALYSIS

These appeals center largely on four questions of statutory interpretation: (1) does a statement listing only the charge-off amount, without further detail as to what debts make up the charge-off balance, constitute an "itemized accounting of the amount claimed to be owed, including all fees and charges," in satisfaction of the Act's pre-collection verification requirement in N.C. Gen. Stat. § 58-70-115(5); (2) does that same charge-off statement constitute "an itemized accounting of all amounts claimed to be owed" in satisfaction of the Act's intent to file legal action notice requirement

found in N.C. Gen. Stat. § 58-70-115(6); (3) does that statement amount to an "[a]n itemization of charges and fees claimed to be owed" necessary for a debt buyer to pursue a default judgment under N.C. Gen. Stat. § 58-70-155(b)(4); and (4) did the documents attached to PRA's complaint showing a transfer of Plaintiff's debt from HSBC to PRA as its eventual owner "establish an unbroken chain of ownership" as required by N.C. Gen. Stat. § 58-70-150(2). We address these statutory concerns before turning to PRA's appeal of the order denying its motion to dismiss for lack of standing, applying a *de novo* standard of review throughout. *See Swauger v. Univ. of N. Carolina at Charlotte*, 259 N.C. App. 727, 728, 817 S.E.2d 434, 435 (2018) ("The standard of review for an appeal based on subject matter jurisdiction is *de novo*. Issues of statutory interpretation are also subject to *de novo* review." (citations omitted)).

A. The Act's Itemization Requirements

Plaintiff argues that the various provisions of the Act requiring "itemizations" of the debt pre-suit and at default judgment require a debt buyer seeking to collect a charged-off debt to possess and provide the trial court with an itemized accounting of the purchases, interest, fees, and other charges that make up that charged-off amount. PRA disagrees and contends instead that the charge-off balance is a single item under the plain language of these statutes; thus, when a debt buyer seeks to collect a debt that consists only of the charge-off balance, the itemization is

accomplished through an account statement listing that singular charge-off amount without further detail.  We hold that PRA, to avoid committing an unfair practice in collecting the charged-off amount, was required to verify, transmit to Plaintiff, and later introduce into evidence an itemization of the charge-off balance that identified the total creditor-assessed charges and total creditor-assessed fees that contributed to the charge-off balance pre-suit and at default judgment.

In reviewing these statutes, "[a]s with any question of statutory interpretation, the intent of the legislature controls."  *Gyger v. Clement*, 375 N.C. 80, 83, 846 S.E.2d 496, 499 (2020) (citation omitted).  We begin with the letter of the law and, "in interpreting a statute, a court must consider the statute as a whole and determine its meaning by reading it in its proper context and giving its words their ordinary meaning."  *City of Asheville v. Frost*, 370 N.C. 590, 592, 811 S.E.2d 560, 562 (2018) (citation omitted).  Where the statute involves repeated terminology, "[o]rdinarily it is reasonable to presume that words used in one place in the statute had the same meaning in every other place in the statute."  *Campbell v. First Baptist Church of City of Durham*, 298 N.C. 476, 483, 259 S.E.2d 558, 563 (1979) (citations omitted).  We may refer to the title of the Act, as "even when the language of a statute is plain, 'the title of an act should be considered in ascertaining the intent of the legislature.' "  *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 8, 727 S.E.2d 675, 681 (2012) (quoting *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812, 517 S.E.2d 874, 879

(1999)). Our Supreme Court has also stated that "[w]hen the legislature . . . use[s] a term which had acquired a settled meaning through judicial construction, . . . that construction bec[o]me[s] a part of the law. In the absence of anything which clearly indicates a contrary intent, the legislature is presumed to have used the statutory term under consideration in its judicially established meaning." *Simms v. Stores, Inc.*, 285 N.C. 145, 157, 203 S.E.2d 769, 777 (1974) (citations omitted).

Turning to the language of the specific statutes at issue here, the word "itemize" has a common meaning: *Black's Law Dictionary* defines the word as "[t]o list in detail; to state by items," *Itemize, Black's Law Dictionary* (9th ed. 2009), while Merriam-Webster offers a similar definition, "to set down in detail or by particulars." *Itemize*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/itemize (last visited 28 November 2020). Thus, the phrases "itemized accounting of the amount claimed to be owed, including all fees and charges" as used in N.C. Gen. Stat. § 58-70-115(5), "itemized accounting of all amounts claimed to be owed" as used in N.C. Gen. Stat. § 58-70-115(6), and "itemization of the charges and fees" as used in N.C. Gen. Stat. § 58-70-155(b)(4) require the detailed listing of each particular item constituting the total amount subject to said itemization.

This common definition is consistent with earlier decisions of this Court. We considered the meaning of an "itemized statement of . . . account" used to verify a

debt in *Bramco Elec. Corp. v. Shell*, 31 N.C. App. 717, 230 S.E.2d 576 (1976), and held that a document listing various outstanding balances was not an "itemized statement of the account" under N.C. Gen. Stat. § 8-45 (1975), because it failed to identify all of the charges that made up those balances. *Id.* at 719, 230 S.E.2d at 577-78. We later applied this same statutory language to hold a credit card invoice showing an unexplained previous balance was not an "itemized statement" of the credit card debt because "[t]here [was] no itemization of credit extended to cover individual transactions." *Unifund CCR Partners v. Dover*, 198 N.C. App. 406, 681 S.E.2d 565, 2009 WL 2180672, *3 (2009) (Unpublished).

With the above definition in mind, and reading the provisions together in context, we hold that PRA failed to abide by the Act's itemization requirements at issue here. The charge-off statement relied upon by PRA itemizes some late fees and interest charges but includes an unexplained prior balance of $1,799.87. While some portion of the charge-off balance is itemized, PRA acknowledged in discovery that it could not fully state what portion of the balance constituted purchases, interest charges, or fees based on the charge-off statement.[2] Because the charge-off statement

---

[2] PRA rightly points out that the charge-off statement attached to its complaint demonstrates that Plaintiff's account had accrued a total of $340 in fees and $328.68 in interest for the year of 2012. That information does not, however, disclose what unpaid fees and interest assessed in prior years went into the charge-off balance, or whether some portion of those interest charges and fees were paid off through a possible complete payment of the credit card balance in the first half of 2012 prior to Plaintiff incurring additional debt, her subsequent non-payment, the assessment of interest, and the eventual charging off of her account.

does not break out and list the total charges and total fees that contribute to the charge-off balance, that document does not constitute an "itemized accounting of the amount claimed to be owed, including all fees and charges" required by N.C. Gen. Stat. § 58-70-115(5),[3] an "itemized accounting of all amounts claimed to be owed" required by N.C. Gen. Stat. § 58-70-115(6), or an "itemization of charges and fees claimed to be owed" required by N.C. Gen. Stat. § 58-70-155(b)(4). To be clear, we do not read the Act to require debt buyers to fully itemize every discrete interest charge, fee, or purchase made with the credit card since the account was opened or the debt was last paid in full. Instead, we hold a debt buyer must be able to document and separate the total creditor-assessed charges and total creditor-assessed fees from the total charge-off balance. In separating out those charges and fees, the remaining portion of the charge-off balance will necessarily represent the unpaid sum of the debtor's cash advances and purchases made with the card.

PRA aptly and ably offers several arguments urging this Court to hold otherwise; each, however, is unavailing. PRA initially contends that the various evidentiary requirements of N.C. Gen. Stat. § 58-70-155(b) demonstrate that a

---

[3] PRA offers a specific argument as to this subsection, contending that it requires only a "reasonable" itemization. This misreads the statute. N.C. Gen. Stat. § 58-70-115(5) requires a debt buyer to perform a "reasonable verification of the amount of the debt allegedly owed by the debtor." It then specifically defines what is reasonable, which includes the necessary itemization: "For purposes of this subsection, reasonable verification shall include . . . an itemized accounting of the amount claimed to be owed, including all fees and charges." *Id.* Thus, a debt buyer reasonably verifies a debt *through* "an itemized accounting of the amount claimed to be owed, including all fees and charges," and not a "reasonable"—but incomplete—itemization.

"charge-off balance" is a particularized item that need not be further explained. It supports this argument by pointing out that N.C. Gen. Stat. § 58-70-155(b)(5) requires a debt buyer seeking a default judgment to introduce into evidence "[t]he original charge-off balance, or, *if the balance has not been charged off, an explanation of how the balance was calculated."* (Emphasis added). Under PRA's reading, this requirement that the calculation of a non-charged-off debt be explained discloses that the charge-off balance need not be itemized.

An itemization, however, is not strictly equivalent to a "calculation;" an itemization is a listing of specific constituent parts, whereas a calculation details how those parts are mathematically combined or otherwise manipulated to constitute the whole. *See Calculate,* Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/calculate (last visited 28 November 2020) ("to determine by mathematical processes"). The phrasing of the statute itself acknowledges a distinction between these terms. *Compare* N.C. Gen. Stat. § 58-70-155(b)(4) (requiring production of "[a]n itemization of charges and fees claimed to be owed" to obtain default judgment), *and* N.C. Gen. Stat. § 58-70-155(b)(6) (requiring "[a]n itemization of post charge-off additions, where applicable" to obtain same), *with* N.C. Gen. Stat. § 58-70-155(b)(5) (requiring "an explanation of how the balance was calculated" at default judgment if the debt has not been charged-off). We therefore

do not agree that subsection (b)(5) demonstrates a charge-off balance is not subject to itemization when that balance is the amount a debt buyer seeks to collect.

PRA next argues that the "itemization of charges and fees claimed to be owed" and "amount of interest claimed and the basis for the interest charged" necessary to obtain a default judgment under subsections (b)(4) and (b)(8), respectively, must refer only to costs imposed *after* charge-off. PRA's argument assumes, however, that a charge-off balance need not be itemized based on their preferred reading—rejected above—of subsection (b)(5). Setting aside this flawed premise, the argument has an additional infirmity; the Act already requires a debt buyer to produce "[a]n itemization of post charge-off additions, where applicable," to obtain a default judgment. N.C. Gen Stat. § 58-70-155(b)(6). To hold that subsections (b)(4) and (b)(8) applied only to amounts added to the debt after charge-off would impermissibly render subsection (b)(6) superfluous. *See Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It is well established that a statute must be considered as a whole and construed, if possible so that none of its provisions shall be rendered useless or redundant.").

PRA further argues that requiring an itemization of the charge-off balance under the provisions of the Act at issue would produce an absurd result, as it would task debt buyers with producing, and trial courts with reviewing, years of account statements. Again, it is not necessary for the debt buyer to identify with particularity

each individual purchase, cash advance, interest charge, or late fee. It is only necessary that the debt buyer possess, review, and introduce enough account information to adequately separate out and list (1) the total creditor-assessed charges and (2) total creditor-assessed fees that, together with the remaining unpaid amount attributable to purchases and cash advances, constitute the charge-off balance sought for collection. Requiring a debt buyer to produce, and a trial court to review, such documentation is not an absurd result, especially when the title and provisions of the Act make clear that the requirement is designed to protect the debtor from debt buyers in particular by tasking them with itemizing the debt subject to collection, including fees and charges under N.C. Gen. Stat. §§ 58-70-115(5) and -155(b)(4). *See* 2009 N.C. Sess. Laws at 1603, ch. 573, § 1 (titling the Act the "Consumer Economic Protection Act of 2009"); *see, e.g., id* at 1605-06, ch. 573, § 5 (amending existing law to provide new unfair practices specific to debt buyers, including itemization requirements).

We are similarly unconvinced by PRA's contention that our holding renders compliance with the Act impossible based on the fact that credit card companies are only required to keep transaction histories for two years under federal law. *See* 12 C.F.R. § 1026.25(a) (2019) (requiring credit card issuers to retain various records, including account statements, for two years). Credit card companies are free under

the law to retain such statements for longer than the federally mandated minimum[4] and, even if they do not, debt buyers can still seek to collect the amounts they are able to itemize through documentation. Nor is documentation of every transaction for the life account necessarily required to comply with our holding, as debt buyers need only be able to accurately document the total creditor-assessed fees and total creditor-assessed charges contributing to the charge-off balance, separating both from each other and the remaining sum of purchases and cash advances constituting the rest of the charged-off debt. As compliance with the Act is still possible under this reading, PRA's argument is overruled.[5]

Finally, we decline PRA's invitation to either apply the rule of lenity or read into the statute an exception to liability for substantial compliance. The rule of lenity, applicable to penal statues, "is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the

---

[4] It appears that credit card issuers do, in fact, retain credit card transaction histories for longer than two years. *See Citibank, S.D., N.A. v. Bowen*, 194 N.C. App. 371, 671 S.E.2d 596, 2008 WL 5225857, *3 (2008) (Unpublished) (discussing production by a credit card issuer in a collection suit filed in March of 2007 of "all credit card statements for defendant dating back to March 2004"); *First Citizens Bank, NA v. L & M Realty & Inv. Prop., Inc.*, 240 N.C. App. 88, 772 S.E.2d 12, 2015 WL 1201356, *2 (2015) (Unpublished) (dispensing of an appeal from a credit card debt collection action in which the credit card issuer produced three years of credit card statements during discovery).

[5] Because we hold that the Act does not require an itemization of the individual purchases and cash advances made with the credit card, but instead a separation of creditor-assessed fees and charges from the extensions of credit to the debtor, we do not address PRA's argument that such transactions are not considered "charges" within the meaning of the Act based on federal law. As for its other argument that some states do not require the itemization called for by our holding, the fact that other states declined to impose such protections for debtors did not preclude our General Assembly from doing so.

'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers." *State v. Raines*, 319 N.C. 258, 263, 354 S.E.2d 486, 490 (1987) (quoting *U.S. v. Brown*, 333 U.S. 18, 25-26, 92 L. Ed. 442, 448 (1948)). Requiring debt buyers, who are otherwise strangers to the debt, to review and provide to the trial court ample evidence of the amounts actually owed by the debtor—in the interest of protecting the debtor from debt buyers who lack adequate documentation as a result of their late arrival to the creditor-debtor relationship—is "in accord with the manifest intent of the lawmakers" as discussed above. *Id.*

As for substantial compliance, PRA cites no North Carolina case law developing that doctrine in this area, relying instead on: (1) a decision from the Eighth Circuit addressing compliance with the federal Fair Debt Collection Practices Act, *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947 (8th Cir. 2006);[6] and (2) an opinion from our Supreme Court applying the doctrine to the very specific—and very different—context of appeals from adoption of annexation ordinances by municipalities. *Thrash v. City of Asheville*, 327 N.C. 251, 393 S.E.2d 842 (1990). Given the General Assembly's use of the mandatory word "shall" when imposing the itemization requirements of the Act, we decline to recognize a deviation from that plain statutory command based on the cases cited by PRA.

---

[6] *Volden* itself recognizes that its application of the substantial compliance doctrine to the Fair Debt Collection Practices Act is in apparent conflict with a decision from another circuit. 440 F.3d at 956.

In sum, we hold that (1) the pre-collection verification through itemization under N.C. Gen. Stat. § 58-70-115(5), (2) the itemization in the pre-suit letter to the debtor mandated by N.C. Gen. Stat. § 58-70-115(6), and (3) the itemized evidence necessary to procure a default judgment under N.C. Gen. Stat. § 58-70-155(b), when read together in context and in light of the purposes of the Act, all require a debt buyer to itemize the charge-off balance when seeking to avoid committing an unfair practice in collecting that amount. Such an itemization is accomplished through a listing of the total creditor-assessed unpaid charges and total creditor-assessed unpaid fees that contribute to the charge-off balance, separating them both from each other and the remaining total of unpaid purchases, cash advances, and any other transactions that constitute the rest of the charged-off amount. In the event that a debt buyer is unable to accomplish such an itemization, it is free to collect those amounts that it can so itemize. We therefore affirm the trial court's grant of partial summary judgment to Plaintiff on her claims brought pursuant N.C. Gen. Stat. §§ 58-70-115(6) and -155. We reverse the grant of partial summary judgment to PRA on Plaintiff's claim under N.C. Gen. Stat. § 58-70-115(5) and vacate those portions of the final judgment precluding Plaintiff's recovery on her N.C. Gen. Stat. § 58-70-115(5) claim.

B. Chain of Ownership

The parties also disagree as to whether the trial court properly entered summary judgment for PRA on Plaintiff's claim that PRA failed to comply with the Act's heightened pleading requirements in N.C. Gen. Stat. § 58-70-150. Specifically, Plaintiff argues that PRA failed to comply with the following provision:

> [I]n any cause of action initiated by a debt buyer, . . . all of the following materials shall be attached to the complaint or claim:
>
> . . . .
>
> (2) A copy of the assignment or other writing establishing that the plaintiff is the owner of the debt. If the debt has been assigned more than once, then each assignment or other writing evidencing transfer of ownership must be attached to establish an unbroken chain of ownership. Each assignment or other writing evidencing transfer of ownership must contain the original account number of the debt purchased and must clearly show the debtor's name associated with the account number.

N.C. Gen. Stat. § 58-70-150. Reviewing the statute and the documents attached to PRA's collection complaint, we hold that the trial court improperly granted summary judgment for PRA on this issue.

As detailed in Part I.2., PRA attached the following documents to its complaint to collect on the credit card debt owed by Plaintiff: (1) Plaintiff's original credit card application; (2) a notice of assignment from HSBC to PRA stating that HSBC had sold "certain assets and liabilities related to HSBC Finance's U.S. credit card and retail services business . . . to Capital One Financial Corporation;" (3) excerpts from

a form filed by HSBC with the United States Securities and Exchange Commission stating that in August of 2011, HSBC "completed the previously-announced disposition of its Card and Retail Services business to Capital One Financial Corporation" for approximately $11.8 billion; (4) two of Plaintiff's account statements from 2012 bearing HSBC's name and logo with an explanation that those marks "are registered trademarks of HSBC . . . and are used by Capital One by permission. Capital One is the issuer of this account;" (5) a bill of sale from Capital One, N.A. to PRA and a bill of sale from Capital One Bank (USA), N.A. to PRA evidencing the sale of certain credit card accounts "identified in the Sale File . . . (which may be in electronic form);" and (6) a table printed from a database listing information about Plaintiff's credit card account, including her name and account number, and identified by a notation on the document as "[d]ata printed by [PRA] from electronic records provided by Capital One, N.A., pursuant to the sale of accounts from Capital One, N.A. to [PRA]."

Plaintiff argues that the above documents do not comply with N.C. Gen. Stat. § 58-70-150(2) as they fail to document transfers of ownership between: (1) HSBC Nevada and HSBC Finance; and (2) Capital One Financial Corporation and either Capital One, N.A. or Capital One Bank (USA), N.A. PRA counters with an assertion that "ownership of property held by a wholly-owned subsidiary is imputed to the

subsidiary's parent" such that transfers between these entities did not involve any change in ownership.

PRA relies on this Court's decision in *In re Fayette Place, LLC*, 193 N.C. App. 744, 668 S.E.2d 354 (2008), where Durham County appealed from a determination by the North Carolina Property Tax Commission that a parcel of land was exempt from taxation as state-owned because a state body's wholly-owned subsidiaries possessed complete ownership and title to the property. *Id.* at 747, 668 S.E.2d at 357. We affirmed the Commission's determination on the ground that under the statutory and constitutional tax exemptions for state property, "[w]here the state possesses a sufficient interest in the property, such as equitable title to the property, the property is said to belong to the state even where legal title to the property is held by another party." *Id.* This Court has since recognized, however, that this holding was limited to its context:

> *[F]or purposes of tax exemption*, this Court has previously held that "legal title is not determinative as to the question of ownership." *Fayette Place LLC ,* 193 N.C. App. at 747, 668 S.E.2d at 357. Instead, "[w]here *[an entity qualifying for a tax exemption]* possesses a sufficient interest in the property, . . . the property is said to belong to [that entity] even where legal title to the property is held by another party."

*In re Blue Ridge Hous. of Bakersville LLC*, 226 N.C. App. 42, 52, 738 S.E.2d 802, 809 (2013) (first alteration and emphasis added).

Even if we were to assume, *arguendo*, that PRA is correct and *Fayette Place*'s discussion of ownership between parents and wholly-owned subsidiaries may be extended to debt collection actions by debt buyers governed by the Act, PRA has failed to comply with the requirements of N.C. Gen. Stat. § 58-70-150(2), particularly as far as Capital One Financial Corporation, Capital One Bank, N.A., and Capital One Bank (USA), N.A. are concerned. Nothing attached to PRA's complaint shows the existence of a parent and wholly-owned subsidiary relationship between these entities. Thus, no "assignment or other writing evidence[es] [a] transfer of ownership" to Capital One Bank, N.A. or Capital One Bank (USA), N.A.—the two entities from which PRA purchased Plaintiff's account. N.C. Gen. Stat § 58-70-150(2). Without such documentation, PRA has failed pursuant to N.C. Gen. Stat. § 58-70-150(2) to "establish an unbroken chain of ownership" through attachment of "[e]ach assignment or other writing evidencing transfer of ownership" under its own preferred theory. We therefore reverse the trial court's entry of summary judgment for PRA on this count and vacate the portions of the final judgment precluding recovery for this claim.

C. Denial of Motion to Dismiss for Lack of Standing

Lastly, the parties argue whether the trial court correctly denied PRA's motion to dismiss for lack of standing. Specifically, PRA contends that Plaintiff lacks standing to recover for violations of N.C. Gen. Stat. §§ 58-70-115(6) and -155 because

Plaintiff admitted owing the amount of the debt PRA seeks to recover and thus suffered no injury in fact.

"As a general matter, the North Carolina Constitution confers standing on those who suffer harm: 'All courts shall be open; [and] every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law.'" *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 642, 669 S.E.2d 279, 281 (2008) (quoting N.C. Const. art. I, § 18).[7] This "irreducible constitutional minimum" consists of the following:

> (1) "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992)). We hold that Plaintiff has demonstrated injury in fact sufficient to satisfy the constitutional standing requirement.

Plaintiff had a legally protected interest against unfair practices by debt buyers. *See* N.C. Gen. Stat. § 58-70-115. Those practices include: (1) seeking to collect

---

[7] Both parties agree that as a statutory matter, a debtor may recover the civil penalty authorized by the Act absent any actual damages. *See Simmons v. Kross Lieberman & Stone, Inc.*, 228 N.C. App. 425, 431, 746 S.E.2d 311, 316 (2013) ("Plaintiff's failure to allege actual injury does not preclude her from recovering a civil penalty under N.C. Gen. Stat. § 58-70-130(b)[.]").

a debt without reasonably verifying it through an itemized accounting of the entire amount claimed, N.C. Gen. Stat. § 58-70-115(5); (2) filing a collection action without providing an adequate pre-suit notice with that itemization to the debtor, N.C. Gen. Stat. § 58-70-115(6); and (3) filing a complaint without attaching documents establishing a complete chain of ownership. N.C. Gen. Stat. §§ 58-70-115(7) and -150(2). Plaintiff was thus required to later defend a suit that the Act made unlawful. That harm was furthered when PRA obtained a default judgment that was not supported with evidence to the satisfaction of the law—an injury that was itself an unfair practice. N.C. Gen. Stat. §§ 58-70-115(7) and -155. The Act's provisions, by their very terms, are designed to protect debtors from facing the suit filed and default judgment entered here; thus, Plaintiff suffered concrete and particularized injuries that the Act sought to prevent.[8]

---

[8] PRA relies on several decisions from federal circuit courts holding violations of the Fair Debt Collection Practices Act's notification requirements and prohibition against misleading statements insufficient to establish an injury in fact necessary for Article III standing. We note, however, that there is a split amongst the circuits on the question. *Compare Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334 (7th Cir. 2019) (holding no injury in fact where debt collector failed to enclose required notification of debt verification procedures that debtor never intended to pursue), *with Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 758 (6th Cir. 2018) (holding plaintiffs suffered an injury in fact for the same violation as in *Casillas* because they "were placed at a materially greater risk of falling victim to 'abusive debt collection practices. . . . [A]s the FDCPA declares, its purpose is to eliminate such abusive practices." (citations omitted)). Further, those cases cited by PRA all involved violations that had no impact on the debtors' actual conduct. *See, e.g., Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 994 (11th Cir. 2020) (holding no injury in fact for debt collector's misleading statements when "neither of [the plaintiffs] claim[ed] to have been misled"). Here, and as explained above, at least two of the violations directly impacted Plaintiff's actions, insofar as she had to defend herself from: (1) a collections suit that could not have been filed pursuant to N.C. Gen. Stat. § 58-70-150(2)'s higher pleading standard and; (2) a default judgment that could not have been lawfully granted under N.C. Gen. Stat. § 58-70-155(b)'s evidentiary requirements.

PRA concedes that the violation of an interest a statute seeks to protect constitutes an injury in fact but asserts that the Act is not actually designed to protect Plaintiff from the above practices based on this Court's decision in *Unifund CCR, LLC v. Francois*, 260 N.C. App. 443, 817 S.E.2d 915 (2018). In that case, the trial court denied a debt buyer's motion for default judgment and dismissed the action *sua sponte* for violating the Act's prohibition against filing a collection action when the buyer knows or should know the claim is barred by the statute of limitations. *Id.* at 446, 817 S.E.2d at 916. We held that the trial court erred in denying the default judgment and dismissing the buyer's complaint because the Act did not empower trial courts to act in that manner *sua sponte* and instead provided "a particular enforcement mechanism for this provision—it authorized the debtor and the Attorney General to bring civil claims against violators to recover actual and statutory damages." *Id.* (citing N.C. Gen. Stat. § 58-70-130). Thus, *Francois* simply states that a trial court is not empowered by the Act to *sua sponte* raise an affirmative statute of limitations defense, deny default judgment, and dismiss a buyer's complaint. *Id.* That trial courts lack authorization to act in such a manner does not mean the "Consumer Protection Act of 2009" is not designed to protect debtors from the unfair practices it seeks to prohibit, including suits filed in violation of the Act's statutory provisions and default judgments obtained on legally inadequate evidence. Because PRA filed a lawsuit and obtained a default judgment in violation of the Act, we hold

that Plaintiff suffered an injury in fact sufficient to establish standing under North Carolina law.

### III. <u>CONCLUSION</u>

The Act seeks to protect debtors from debt buyers who lack the information and evidence required to prosecute collection actions in our courts, including an "itemized accounting of the amount claimed to be owed, including all fees and charges," under N.C. Gen. Stat. § 58-70-115(5), an "itemized accounting of all amounts claimed to be owed" under N.C. Gen. Stat. § 58-70-115(6), and an "itemization of charges and fees claimed to be owed" under N.C. Gen. Stat. § 58-70-155(b)(4). Construing these statutes together and giving their terms their ordinary meaning, the Act tasks debt buyers seeking to collect a credit card charge-off balance with fully itemizing that amount pre-collection, pre-suit, and prior to default judgment. Said itemizations are accomplished through statement of (1) the total creditor-assessed charges and (2) the total creditor-assessed fees that, when taken together with the remaining total representing any unpaid transactions and extensions of credit to the debtor, constitute the unpaid charge-off balance. Further, any complaint to collect on such a debt must be accompanied by "each assignment or other writing evidencing transfer of ownership . . . establish[ing] an unbroken chain of ownership." N.C. Gen. Stat. § 58-70-150(2). Where a party relies on a parent-subsidiary theory of ownership of the debt and omits any documents disclosing the

existence of such a relationship, that requirement is not met. Because PRA violated each of the statutory provisions above, we affirm the trial courts entry of summary judgment for Plaintiff on her claims alleging violations of N.C. Gen. Stat. §§ 58-70-115(6) and -155, and reverse summary judgment for PRA on Plaintiff's claims under N.C. Gen. Stat. §§ 58-70-115(5) and -150(2). To the extent any provisions of the final judgment entered 7 October 2019 prohibit recovery on the latter two claims, those provisions are vacated. Lastly, we affirm the trial court's denial of PRA's motion to dismiss and remand the matter for further proceedings consistent with this opinion. AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; AND REMANDED.

Judges ZACHARY and ARROWOOD concur.